BENNETT *v.* KALAMAZOO CIRCUIT JUDGE.

1. MANDAMUS—MOTIONS—NOTICE.
   The prosecuting attorney is not required as matter of practice to serve on the members of a grand jury which filed a report criticising official conduct, notice that he would move to strike the report from the records of the court, to entitle him to commence mandamus proceedings against the circuit judge to compel the granting of such motion.

2. SAME—HEARING ON PETITION—PRELIMINARY PROCEEDINGS.
   Where the prosecutor failed to ask to have the petition brought on for hearing in the circuit court, but the opposing counsel asked the court to dispose of the case on its merits, not relying on the technical point in the Supreme Court, the matter will be considered on its merits in mandamus proceedings.

3. CRIMINAL LAW—PRESENTMENT—INDICTMENT.
   As distinguished from an indictment, a presentment is the notice taken by a grand jury of any offense from its own knowledge, without a bill of indictment laid before it at the suit of the Commonwealth, and is usually considered as instructions upon which a prosecution may be founded: it is usually informal and not technically framed.

4. SAME—PROSECUTING ATTORNEY — PRESENTMENT—GRAND JURY—REPORT—CRITICISM OF PUBLIC OFFICIAL.
   Where the grand jury, after investigating certain charges and crimes and returning indictments against certain respondents, also presented to the court a report criticising the official conduct of the prosecuting attorney and charging him with criminal conduct and with neglect of duty, but did not indict the official, the report should have been struck from the files of the court on his motion.

Mandamus by Milo O. Bennett against the circuit judge of the county of Kalamazoo to compel respondent to grant a motion of the relator to strike from the files of the court a report of the grand jury. Sub-

mitted October 6, 1914.   (Calendar No. 26,313.)   Writ
granted December 18, 1914.

*Milo O. Bennett,* in pro. per.

*Alfred J. Mills,* for respondent.

BROOKE, J.   Relator asks for mandamus to compel
the respondent to make an order striking from the
files of the circuit court of Kalamazoo county a certain
report presented to the said court by a grand jury.
The report in question follows:

"STATE OF MICHIGAN.

*"To the Circuit Court for the County of Kalamazoo:*
   "We, the members of the grand jury now in session,
beg leave to report, in addition to the reports already
made, that our investigations have disclosed the exist-
ence of a state of affairs in connection with the office
of prosecuting attorney for this county which we
deem it our duty to call to the attention of the court.
   "1. The evidence disclosed that the prosecuting at-
torney of this county has violated the laws of the
State by drawing from the treasury of the county the
sum of $245, claiming that amount as fees for services
rendered in certain divorce cases, to which we believe
he is not legally entitled.   Act No. 586 of the Local
Acts of the State of Michigan for the year 1907 pro-
vides that the salary of the prosecuting attorney for
the county of Kalamazoo shall be fixed by the board
of supervisors, and that such compensation shall be
in full for all services that may be rendered for which
the county may be liable, and in lieu of all fees which
are fixed by law.
   "2. That he was advised, as the evidence shows,
before drawing said amount that he was not entitled
thereto; notwithstanding which he drew the same
from the treasury of the county and retains the
amount so drawn, and has neglected and refused, and
still neglects and refuses, to return the money so
drawn to the treasurer of the county.
   "3. Our investigation further shows that he has re-
fused to attend sessions of the grand jury, though

often requested by the circuit judge to do so, thereby subjecting the county to a great expense of having a special prosecutor to perform the duties for which he was elected and for which he is paid by the county.

"4. Without going into details our investigations further show that from the time the grand jury was summoned, and since it has been in session, that the prosecuting attorney of this county has, through the public press and otherwise, sought to cast discredit upon and to obstruct, hinder, and delay any efforts of the jury to get at the truth or falsity of the many rumors of alleged criminal irregularities within the county and city of Kalamazoo; that he furthermore in furtherance of his schemes has not hesitated to apply the most vile, profane, obscene, and vulgar epithets (too filthy, vile, and disgusting to be embodied in this report), not only to the chief executive of the State, the head of the legal department thereof, but to others who have been engaged in an honest effort to arrive at the truth of matters under investigation.

"5. Our investigation has disclosed in the conduct of criminal business of the county that he is utterly incompetent to discharge properly the duties of the office to which he has been elected. His neglect of duty and his conduct has been of so serious a nature that we feel it our duty to bring the same to the attention of the court and to request that this report or a copy thereof be forwarded to the governor of the State for consideration and for such action as to him shall seem proper.

[Signed] "THE GRAND JURY OF KALAMAZOO
                    COUNTY,
                "By BYRON J. CARNES,
                    "Foreman of Grand Jury."

The relator charges that the averments and innuendoes contained in said report are false and malicious, and wrongfully tend to impute a lack of integrity on the part of petitioner.

He filed a petition with the circuit judge demanding that said paper be summarily stricken and expunged from the files and records of the court. Re-

spondent's return to the order to show cause, issued by this court, shows that in fact relator's petition filed in his court has never been acted upon, for the reason that no notice has been given by relator to members of the grand jury making the report, nor has any hearing upon said petition been demanded by relator. Respondent, however, returns that if he had acted upon said petition, as he is at present advised, he would have denied the prayer of the same for the following reasons:

"(*a*) Because, as matter of law, it is his judgment that the said grand jury had the lawful right to make said report to the court for the purposes therein set forth.

"(*b*) Because in the judgment of the respondent, said report was made to the court by said grand jury in good faith, and not from malicious or improper motives.

"(*c*) Because an *ex parte* decision to strike said report from the files and proceedings of the court would, in the judgment of respondent, be an adjudication which might embarrass the grand jury and the several members thereof, and render them, at least *prima facie,* guilty of libeling relator.

"(*d*) Because the lawful rights of the relator, the members of the grand jury, the court, and the people of Kalamazoo county are such, in the judgment of respondent, as to render it improper to strike said report from the files and proceedings of said grand jury and award the relief prayed by relator in and by his petition to strike same from said files.

"(*e*) Because the relator's remedy, if any, in the premises, is not by writ of mandamus, but by suit, or suits, as against the grand jurors and all who may have taken part in the preparation and publication of said report, if the matters embraced therein are false and untrue, and if said report was not made by said grand jury in good faith and without malicious motives, and respondent states and avers that if all the matters and things stated, alleged, and averred in the relator's petition in this matter are true, which

this respondent does not concede, he is not entitled to the relief prayed, and respondent demurs thereto for that reason."

We are of the opinion that it was unnecessary for relator to serve notice of his motion to strike said report from the files upon any member of the grand jury. The paper, having been filed, became a part of the records of the circuit court for the county of Kalamazoo and, as such, was peculiarly within the custody and control of respondent. Touching the failure of relator to demand a hearing upon said petition, it is, we think, true that relator should have secured action, one way or the other from respondent, upon his petition before applying to this court for relief. However, we are not inclined to dispose of the case upon this technicality, in view of respondent's return, and in view of the further fact that counsel for respondent has asked us to disregard the technical defense, and dispose of the question upon its merits. We will, therefore, consider the matter in this court as if, in fact, the respondent had refused upon proper application to expunge the report from the records of the court.

In order to determine the question in issue, it becomes necessary to ascertain, if possible, what duties and functions devolve upon the grand juries in this jurisdiction. Blackstone, in his Commentaries, book 4, page 301, defines the procedure as follows:

"The next step towards the punishment of offenders is their prosecution, or the manner of their formal accusation. And this is either upon a previous finding of the fact by an inquest or grand jury; or without such previous finding. The former way is either by presentment or indictment.

"1. Presentment by indictment. A presentment, generally taken, is a very comprehensive term; including not only presentments, properly so called, but

also inquisitions of office and indictments by a grand jury. A presentment, properly speaking, is the notice taken by a grand jury of any offense from their own knowledge or observation, without any bill of indictment laid before them at the suit of the king; as the presentment of a nuisance, a libel, and the like; upon which the officer of the court must afterwards frame an indictment, before the party presented can be put to answer it. An inquisition of office is the act of a jury summoned by the proper officer to inquire of matters relating to the crown, upon evidence laid before them. Some of these are in themselves convictions, and cannot afterwards be traversed or denied; and therefore the inquest or jury ought to hear all that can be alleged on both sides. Of this nature are all inquisitions of *felo de se;* of flight in persons accused of felony; of deodands, and the like; and presentments of petty offenses in the sheriff's tourn or court-leet, whereupon the presiding officer may set a fine. Other inquisitions may be afterwards traversed and examined; as particularly the coroner's inquisition of the death of a man, when it finds any one guilty of homicide; for in such cases the offender so presented must be arraigned upon this inquisition, and may dispute the truth of it; which brings it to a kind of indictment, the most usual and effectual means of prosecution, and into which we will therefore inquire a little more minutely.

"2. An indictment is a written accusation of one or more persons of a crime or misdemeanor, preferred to, and presented upon oath by, a grand jury. To this end the sheriff of every county is bound to return to every session of the peace, and every commission of *oyer* and *terminer,* and of general gaol-delivery, twenty-four good and lawful men of the county, some out of every hundred, to inquire, present, do, and execute all those things which, on the part of our lord the king, shall then and there be commanded them. They ought to be freeholders, but to what amount is uncertain: which seems to be *casus omissus* (omitted cases), and as proper to be supplied by the legislature as the qualifications of the petit jury, which were formerly equally vague and uncertain, but are

now settled by several acts of parliament. However, they are usually gentlemen of the best figure in the county. As many as appear upon this panel are sworn upon the grand jury, to the amount of twelve at least, and not more than twenty-three; that twelve may be a majority. Which number, as well as the constitution itself, we find exactly described, so early as the laws of King Ethelred. (*Exeant seniores duodecim thani, et præfectis cum eis, et jurent super sanctuarium quod eis in manus datur, quod nolint ullum innocentem accusare, nec aliquem noxium celare.*) (Let twelve elder freemen, and the foreman with them, retire and swear upon the holy book which is given into their hands that they will not accuse any innocent person, nor screen any criminal.)    In the time of King Richard the First (according to Hoveden) the process of electing the grand jury ordained by that prince, was as follows: four knights were to be taken from the county at large, who chose two more out of every hundred; which two associated to themselves ten other principal freemen, and those twelve were to answer concerning all particulars relating to their own district. This number was probably found too large and inconvenient; but the traces of this institution still remain in that some of the jury must be summoned out of every hundred. This grand jury are previously instructed in the articles of their inquiry, by a charge from the judge who presides upon the bench. They then withdraw to sit and receive indictments, which are preferred to them in the name of the king, but at the suit of any private prosecutor; and they are only to hear evidence on behalf of the prosecution; for the finding of an indictment is only in the nature of an inquiry or accusation, which is afterwards to be tried and determined; and the grand jury are only to inquire, upon their oaths, whether there be sufficient cause to call upon the party to answer it. A grand jury, however, ought to be thoroughly persuaded of the truth of an indictment, so far as their evidence goes; and not to rest satisfied merely with remote probabilities; a doctrine that might be applied to very oppressive purposes."

The definition of a "presentment" as distinguished

from "indictment" is set out in 20 Cyc. p. 1335, § B-2, as follows:

"A presentment in its limited sense is the notice taken by a grand jury of any offense from its own knowledge or observation without a bill of indictment laid before it at the suit of the Commonwealth. It is generally regarded in the light of instructions upon which an indictment must be found. In some jurisdictions either under statute or apart from statute, grand juries have the power to make presentment of offenses which are within their own knowledge and observation or are of public notoriety and injurious to the entire community. But in other jurisdictions it is held that the grand jury has no power to present any person for a criminal offense except by indictment."

It is said in Hirsh on Juries, p. 209, § 725, par. 2:

"In addition to bills of indictments and specific offenses, the grand jury have the right to present to the court such public wrongs as in their judgment should be brought to the notice of the court."

In a charge to a grand jury delivered by Mr. Justice Field, and reported in 2 Sawy. (U. S.) 667 (Fed Cas. No. 18,255), the following definition of "presentment" is found:

"A presentment differs from an indictment in that it wants technical form, and is usually found by the grand jury upon their own knowledge, or upon the evidence before them, without having any bill from the public prosecutor. It is an informal accusation, which is generally regarded in the light of instructions upon which an indictment can be framed.

"This form of accusation has fallen in disuse since the practice has prevailed—and the practice now obtains generally—for the prosecuting officer to attend the grand jury and advise them in their investigations."

The identical question here presented seems to have arisen in the State of New York in the case of *In re*

*Osborne,* 68 Misc. Rep. 597 (125 N. Y. Supp. 313). There a grand jury was summoned to take action regarding the American Ice Company. The deputy attorney general attended the grand jury and instructed them to find "no bill," because of lack of evidence. The grand jury, however, did present to the court a report assailing the conduct and integrity of the deputy attorney general. This is a late case, being tried in 1910. In ordering the report expunged from the records, the court says:

"It has become a custom of almost invariable occurrence that the grand jury, at the close of its term, makes a presentment on some subject on which, frequently, no evidence has been heard. This, no doubt, proceeds from the zeal of its members to promote the general welfare by calling attention to certain conditions which they believe should be remedied. So long as they are confined to matters of general interest, they are regarded as harmless, even though a waste of time and effort, and after the ephemeral notice of the day has passed they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impugned, and he held to reprobation, without an opportunity to defend or protect his name and reputation, for it must be borne in mind that, if the gentlemen of the grand jury were to meet as an association of individuals and give expression to the sentiments contained in a presentment, little attention would be paid to them, and a healthy regard for the responsibility of utterances injurious to the individual would, in all probability, restrain exaggerated and unfounded statements. The mischief arises from a prevalent belief that a grand jury making the conventional presentment speaks with great authority and acts under the sanction of the court, thereby giving to its deliverance a solemnity which impresses the mind of the public. This is a grave error. The powers and duties of a grand jury are defined by law. No matter how respectable or eminent citizens may be who comprise the grand jury, they are not above the law, and the people have not delegated to them arbitrary or plenary powers to do

that, under an ancient form, which they have not a legal right to do.   *   *   *

"Some States have abolished the grand jury system. This State yet preserves it, and it may be wise that it does so, for it is an institution that has indelibly impressed upon the pages of history a record for the protection of the citizen against the arrogance and oppression of power and has inspired in the hearts of the lawless and corrupt a healthy fear of its powers and honesty. But its action should be checked when, from thoughtlessness or misconception   *   *   *   it arraigns the citizen in phrases accusing him of acts or conduct which in themselves are not criminal, thereby precluding him from the right guaranteed by the Constitution to every man to meet his accusers face to face before a jury of his peers, but which are the most insidious and harmful because they must remain without answer or denial. Such is this case, and in the interests of justice I am constrained to protect the attorney general and his deputies from an injustice by directing that the paper presented to the court by the grand jury, bearing date the 7th day of April, 1908, and entitled 'a presentment,' be stricken from and expunged from the records of this court."

In the case of *Rector* v. *Smith*, 11 Iowa, 302, which was an action for libel against grand jurors for filing a report reflecting upon the conduct of plaintiff as county judge, it was held that the plaintiff could not recover, on the ground that the presentment was made without malice and supposedly in discharge of duty. The court, however, made the following comment upon the duties of the grand jury:

"It is made the duty of the grand jury when they find that an indictable offense has been committed within their county, to present the same by indictment. See Code, § 2897. By section 2992 it is made the special duty of the grand jury to inquire into the matters specified in the four subdivisions of this section. It is under the provisions of this section that the defendant claims that the law authorized and justified him in presenting to the court, as a grand juror,

183 Mich.—14.

the report in regard to the actions of plaintiff as county judge. The grand jury have no power, nor is it their privilege or duty to present any person for a criminal offense except by indictment. If the misconduct of an officer does not amount to a crime, and is not of such magnitude as will justify the jury in finding an indictment, their powers over the offense complained of are at an end."

It would appear that the statutory enactments relative to the duties of grand juries in Iowa were without effect upon the determination.

In *State* v. *Darnal,* 1 Humph. (Tenn.) 290, it is said:

"The presentment is in the form of a bill of indictment, and is signed individually by the grand jurors who returned it. In England, as we have had occasion heretofore to observe, an offender never was put upon trial upon a presentment, but on a return of a presentment by the grand jury, which was merely an informal information of the offense having been committed, the attorney general prepared a bill of indictment thereon, stating an offense in legal and technical form, and, upon this the person charged was put upon his trial. But such has not been the practice in the State of Tennessee. Here, when the grand jury, or any one of their body, is cognizant of an offense, the practice is to inform the attorney general thereof in the first instance, who prepares a bill of indictment upon the information, which is delivered to the grand jury and is by them returned, instead of the old informal presentment."

In the case of *Grand Jury* v. *Public Press,* 4 Brewst. (Pa.) 313, in speaking of presentments, the court said:

"Like an indictment, however, it must be the act of the whole jury, not less than 12 concurring in it. It is, in fact, as much a criminal accusation as an indictment, except that it emanates from their own knowledge, and not from the public accuser; and, except that it wants technical form, it is regarded as instructive for an indictment. That a grand jury may adopt such a course of procedure without a previous

preliminary hearing of the accused is undoubted; it is equally true that in making such a presentment the grand jury are entirely irresponsible, either to the public or to individuals aggrieved, the law giving them the most absolute and unqualified indemnity for such an official act."

In the case of *In re Jones,* 101 App. Div. (N. Y.) 55 (92 N. Y. Supp. 275), decided in 1905, a report or presentment was filed by the grand jury criticising certain officials of the court. It was sought to have the same expunged from the records. This relief was denied by the court, but at page 58 of 101 App. Div. (92 N. Y. Supp. 277), it is said:

"I think that if under the guise of a presentment the grand jury simply accuse, thereby compelling the accused to stand mute, where the presentment would warrant indictment so that the accused might answer, the presentment may be expunged, but I do not think that a presentment as a report upon the exercise of inquisitorial powers must be stricken out if it incidentally point out that this or that public official is responsible for omissions or commissions, negligence, or defects."

In this State there are but two matters upon which a grand jury have statutory right to make reports or presentments, *i. e.,* trespass on public lands, 1 Comp. Laws, § 1395, and violation of the election laws, § 11443 (5 How. Stat. [2d Ed.] § 14910). 3 Comp. Laws, §§ 11891, 11893 (5 How. Stat. [2d Ed.] §§ 15062, 15064), provide how indictments shall be found, but contain no provisions for the filing of a report or presentment reflecting upon the conduct of public officials.

An examination of the report filed by the grand jury in the instant case shows that it contains reflections of the gravest character upon the official conduct of the petitioner, if it does not actually charge him with the commission of a felony.

A review of all the cases cited upon both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the grand jury has no right to file such a report, unless it is followed by an indictment. The evils of the contrary practice must be apparent to all. While the proceedings of the grand jury are supposed to be secret, it is clear that in the present instance that secrecy was not inviolate, for the objectionable report found its way into the press of Kalamazoo within a few hours after it had been filed. Whether the matter contained in such report be true or false, it can make no difference with the principle involved. In either event the accused person is obliged to submit to the odium of a charge or charges based, perhaps, upon insufficient evidence, or no evidence at all, without having the opportunity to meet his accusers and reply to their attacks. This situation is one which offends every one's sense of fair play and is surely not conducive to the decent administration of justice. Upon the coming in of said report, we are of the opinion, that it was the duty of the trial court to have refused to accept it, or file it with the records of his court. Having received and filed it, upon the application of the petitioner, it was plainly his duty to have expunged it from the files. The writ will issue as prayed.

McALVAY, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred with BROOKE, J.

OSTRANDER, J. I concur in the result. I think the paper in question was not a "presentment" by the grand jury.