STEPHENSON, County Treas., v.
BONNEY et al.
MOBLEY et al. v. STEPHENSON,
County Treas., et al.

Nos. 33083, 33084. March 21, 1950.

*216 P. 2d 315.*

R. E. Stephenson and Don W. Walker, both of Sapulpa, for plaintiff in error Stephenson.

G. B. Coryell, of Sapulpa, and Sam A. Denyer, of Drumright, for plaintiffs in error Mobley and others.

Tom Wallace and Everett S. Collins, both of Sapulpa, and DeWayne Hays and LeRoy Powers, both of Oklahoma City, for defendant in error and respondent W. C. Bonney.

ARNOLD, V.C.J. These two cases, consolidated here for the purpose of review, present separate appeals, one by the county treasurer of Creek county and the other by certain property owners of the city of Sapulpa, from an order and judgment of the district court of Creek county in cause No. 25877 on the docket of that court wherein W. C. Bonney was plaintiff and P. J. Stephenson, county treasurer, was defendant, same being a proceeding in mandamus.

Cause No. 25877 was filed in the district court of Creek county December 26, 1945, and on January 10, 1946, the property owners, now appearing as appellants in cause No. 33084 in this court, commenced an action in the superior court of Creek county for injunction against the county treasurer. Both actions involved the collection of sewer assessments in sewer district No. 7 in the city of Sapulpa. These two cases reached this court on original application of the plaintiff in No. 25877 in the district court for a writ of prohibition against the superior judge of Creek county to restrain further proceedings in that court on the ground of conflict of jurisdictions. This court granted the writ (State ex rel. Bonney v. Arthurs, 197 Okla. 215, 169 P. 2d 561). In its opinion in that case this court determined that there was intolerable conflict in the jurisdiction of the two lower

courts and suggested that the property owners, who were plaintiffs in the action in the superior court, might obtain any relief to which they were entitled by intervening in cause No. 25877 in the district court or by instituting an independent action therein. Pursuant to this suggestion by this court, the property owners made application to the district court to intervene in cause No. 25877. Leave was granted and they filed their petition in intervention therein. In their petition in intervention the property owners assailed the validity of the sewer assessment liens in sewer district No. 7 on various grounds, and further alleged that the lien of said sewer assessments was barred by limitations and laches. They asked that the writ of mandamus sought by plaintiff be denied, that the lien of said sewer assessments be canceled, and that their respective titles to the property involved be quieted.

The county treasurer filed a response to the alternative writ consisting of a general denial and a plea of the statute of limitations.

The facts with reference to the ownership of the sewer warrants, their nonpayment and the ownership of the properties covered by the sewer assessments by the interveners based upon tax titles and mesne conveyances from tax sale purchasers, were stipulated in writing and filed in the case. Upon trial of the cause and on motion of the plaintiff, Bonney, the court ordered the petition of interveners stricken and found the issues as to mandamus in favor of plaintiff and granted the writ. The county treasurer appealed from the judgment granting the writ and his appeal here was docketed as No. 33083. The appeal of the interveners was docketed here as No. 33084. In our consideration and discussion of the questions presented here, the parties will be referred to as plaintiff, defendant, and interveners as they appeared in the trial court.

Defendant and interveners have filed a joint brief in this court. Their argument in behalf of interveners in No. 33084 being first presented and thereafter followed by argument in behalf of defendant in No. 33083. We will follow the form of this presentation of the two cases hereafter.

Upon the trial of the case, and in addition to the facts stipulated by the parties, the trial court took judicial notice of its own records and from them found:

"It appears from the records in this court that for twenty years there has been a constant fight against the collection of these assessments. If I am not mistaken, this matter has been through the courts and through the Supreme Court about four times in the last twenty years, the property owners standing in the way of the collection of the assessments and permitting their property to accumulate delinquent ad valorem taxes so that the property could be sold for ad valorem taxes and tax deeds issued in the hope that such deeds would cancel out the sewer assessments. In the first case to go to the Supreme Court, the question as to the legality of the sewer bonds was threshed out and decided by the high court that the bonds were in all respects legal but that didn't stop the litigation."

There is no contention by interveners in their brief that this finding of the trial court based upon its own records is incorrect in any respect. The sole contention here is based upon this proposition:

"The legal effect of the sale of their property for delinquent ad valorem tax foreclosed and discharged the claimed sewer liens."

It is pointed out that there is a distinction between the quality of the sewer assessment lien and the quality of a street improvement lien in that the latter is made coequal with ad valorem taxes, while the former is not. Upon this distinction in the quality of the two liens interveners contend that the rule adopted by this court in relation to street improvement liens, to the effect that a sale for ad valorem taxes,

without including therein street improvement liens, does not cancel the latter, is not applicable to sewer assessment liens. We think this distinction between the two classes of liens is not controlling or even material here when the language of the two statutes involved is considered and compared. As to street improvement assessments, it is provided by 11 O. S. 1941 §106, that delinquent installments shall be certified to the county treasurer and "shall be by said County Treasurer placed upon the November delinquent tax list of the same year prepared by the Treasurer of said county, and collected as other delinquent taxes are collected." There can be no question, and interveners raise none, that this language justifies the holdings of this court that only those delinquent installments of street improvement liens which are included in the notice of tax sale and resale are canceled by such sale. By the comparable provision of 11 O. S. 1941 §279, it is required that delinquent installments of sewer assessments shall be certified "to be collected as other taxes." The word "as" in the connection there used means "in like manner" (Webster Dict.; 5 C. J. 597, §1). The only way in which delinquent ad valorem taxes and delinquent street improvement assessments may be collected by sale and resale is after due notice by publication. If delinquent sewer assessments are to be collected as other taxes, or in like manner, it is clearly apparent that they must be included in the sale or resale for delinquent taxes after notice by publication. A further comparison of the statutory language relating to these two classes or liens confirms our belief that it was not the intention of the Legislature to make a distinction in the quality of the two liens, but only as to coequality with ad valorem tax liens. As to street improvement liens, sections 103, Id., provides:

". . . such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant of warranty."

As to sewer assessment liens, section 279, Id., provides:

"The said assessment shall be a charge and lien against the property upon which assessed until fully discharged, but unmatured installments shall not be deemed to be within the terms of any general covenant of warranty."

As authorities for their contention in this regard, interveners cite Nix v. Reynolds, 193 Okla. 15, 141 P. 2d 86; Lemen v. Board of County Commissioners of Garfield County, 194 Okla. 248, 149 P. 2d 258; Warner v. Day, 197 Okla. 319, 170 P. 2d 246. We are of the opinion that none of these authorities have application to the situation here presented. In Nix v. Reynolds the question determined arose under the provisions of the charter of the city of Tulsa which superseded the state law. In the Lemen case the question involved was whether sidewalk assessments, which were included in the notice of resale for ad valorem taxes, were canceled by the sale and the answer was "yes". In the case of Warner v. Day the question arose as to priority of payments as between street improvement liens and sidewalk liens from the proceeds of a sale which were insufficient to cover both liens. We are not here considering either the coequality of street improvement liens with liens for ad valorem taxes nor the inferiority of sewer assessment liens to liens for ad valorem taxes. Both are positive acts of government in the exercise of police power. The only question here is whether sewer assessment liens, in order that a sale for ad valorem taxes shall cancel them, must be included in the notice of such tax sale.

We are of the opinion that the reasoning of this court in the case of McGrath v. Oklahoma City, 156 Okla. 34, 9 P. 2d 711, and in Hinkle v. Board of County Commissioners. 197 Okla. 362,

170 P. 2d 544, is applicable to these sewer assessment liens and that the same are not canceled by sale and resale for delinquent ad valorem taxes unless they are included in the notices of such sales.

It is next contended by interveners under the above-quoted proposition that the sewer assessment liens are barred by limitations and laches. Interveners' entrance into the mandamus proceeding did not change the nature of that proceeding, but it remained a special proceeding in mandamus to which the statute of limitations does not apply. (Board of Education v. Johnston, 189 Okla. 172, 115 P. 2d 132.) The only right which their intervention in the mandamus proceeding gave to interveners was the right to show that plaintiff did not have a clear legal right to the remedy which he sought.

Upon the question of laches, it is apparent from the history of this litigation outlined by this court in the case of State ex rel. Bonney v. Arthurs, supra, that since 1924 the property owners involved have consistently acted so as to prevent any attempt by the lienholder or by the county treasurer of Creek county to collect these sewer assessments as other taxes are collected. As shown by the findings of the trial court, these property owners, after being unsuccessful in a suit to force the county treasurer to accept payment of ad valorem taxes without payment of sewer assessments, refused to pay their ad valorem taxes and permitted the same to go delinquent and to sale and resale. By various court actions, some of which were never appealed while others have reached this court, they have sought in every way to avoid payment of these sewer assessments which this court in 1924 adjudged to be legal and valid obligations. Whether laches will be applied in any particular case does not depend upon any particular lapse of time, but upon the facts and circumstances disclosed. In American-First National Bank, etc., v. Peterson, 169 Okla. 588, 38 P. 2d 957, this court said:

"The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another."

The delay must be unreasonable and inexcusable under the circumstances shown. (Parks v. Classen Co., 156 Okla. 43, 9 P. 2d 432.) If interveners have suffered financially by the unreasonably delay occasioned by this long series of court actions, their injury has been self-inflicted in an effort to nullify the effect of this court's judgment in the case of M. D. Gibbs et al. v. Payne, Co. Treas. 97 Okla. 65, 222 P. 555.

In the county treasurer's response to the alternative writ of mandamus he answered by general denial and by a plea of the statute of limitations. That the general denial presented no defense to the alternative writ is evident from the fact that the peremptory writ sought by plaintiff was to compel the county treasurer to perform official duties expressly imposed upon him by statute, and which, admittedly, he has not performed.

His plea of the statute of limitations presented no defense to the alternative writ for the reason that statutes of limitation have no application to proceedings in mandamus. From a consideration of all the facts and circumstances disclosed by the record in these cases, we are of the opinion that the action of the trial court in striking interveners' petition was correct and that its order and judgment granting a peremptory writ of mandamus against the defendant county treasurer must be affirmed.

Judgment affirmed.

WELCH, CORN, GIBSON, HALLEY, and JOHNSON, JJ., concur.