### In re POLK COUNTY GRAND JURY.

Circuit Court, Polk County.

June 22, 1956.

Boone D. Tillett, Jr., Lake Wales, pro se.

H. Gunter Stephenson, State Attorney, Winter Haven, for the state.

WILLIAM P. ALLEN, Circuit Judge.

The Polk County Grand Jury Spring Term, 1956, in addition to reporting several indictments as a result of certain charges and countercharges made by Senator Harry E. King and Boone D. Tillett, Jr., filed a presentment which included the following—

"With the above in mind, the grand jury finds that many of the facts revealed and the method used therefore were not performed primarily for clean government and the public good. On the contrary, we find that Boone D. Tillett, Jr., was primarily motivated in this case by his own political ambitions and malicious desire for revenge.

"We further find that, while the said Boone D. Tillett, Jr. was serving Polk County in the legislature, much of his time was spent in an effort to dig up facts unfavorable to the senator from Polk County, Florida, and every method used to discredit the motives and actions of said senator; that the methods used by the said Boone D. Tillett, Jr., in his effort to discredit said senator were most reprehensible and should not be condoned by this jury or the public."

Mr. Tillett has filed a motion with this court to expunge the above quoted paragraphs from the grand jury's report. The question involved in this motion to expunge is the authority of the grand jury to file a presentment attacking the actions and motives of an individual without indicting him for a crime.

Nothing hereinafter said or referred to in this opinion involves the good faith, character or reputation of any of the members of the grand jury. Neither is the truth or falsity of the charges made in the presentment involved—the sole question is the authority of the grand jury to so act.

This judge had charge of the grand jury in question and was impressed with the character of the men on the grand jury and their desire to arrive at the truth of the charges involved before them.

A grand jury's investigation is primarily one to determine whether a probable cause exists from the facts presented to it, to determine whether a crime has been committed, and if so who was involved therein. The defendant very seldom has an opportunity to defend himself before the grand jury but if the grand jury indicts then the person so indicted has his opportunity to present his evidence on a trial before a jury—where the truth or falsity of the indictment may be determined.

However, where a presentment is filed where certain charges are made against a private individual, he has no chance to defend himself against those charges.

Many of the supreme court decisions of other states hold that it is the duty of the grand jury to indict if they find that an in-

dividual is guilty of any crime, but that if no indictment is returned then the grand jury has no authority to do anything further. Other high courts sometimes, reviewing statutes or judicially interpreting the common law, hold that a grand jury may investigate any incompetency or misconduct of any public official in the county and may recommend that he be removed from office.

In Parsons v. Age-Herald Pub. Co., 61 So. 345, the Supreme Court of Alabama is discussing the functions of a grand jury said at page 348—

> It is the duty of every grand jury to investigate any alleged incompetency or misconduct of any public officer in the county; and, if they find that any county officer ought to be removed from office for any impeachable offense named in section 7099 of the Code, they shall so report to the court, "setting forth the facts, which report shall be entered on the minutes of the court."***
>
> They are neither required nor authorized by any statute to report the result of such investigations when they fail to find any impeachable fault or offense; and when they report and criticize any misconduct, real or fancied, of lesser grade, it cannot be for the purpose of invoking any judicial action, and is in fact no part of any judicial proceeding, actual or potential. Of course, these observations do not apply to the duties specially enjoined upon the grand jury by law to examine and report upon the several public matters named in sections 7287-7292 of the Code, with which we are not here concerned.

In Bennett v. Kalamazoo Circuit Judge, 150 N.W. 141, the Michigan Supreme Court held that a report reflecting on the official conduct of the prosecuting attorney, not followed by an indictment, should be expunged from the records of the court on the motion of the official assailed.

In a Maryland case reported in 137 Atl. 370 the court said at page 375—

> The report in the present case does not charge any violation of law, but is a censure of the conduct of persons engaged in the public business, impugning their integrity and fairness and pointing them out as public servants whose official acts should merit condemnation at the hands of the people. The function of the grand jury is to investigate violations of the criminal law, and in performing this function their inquisitorial powers are unlimited. If, however, having exercised these powers in any given case, there is lacking sufficient evidence to indict, their duty in that particular case ceases, and, under their oath, nothing transpiring within their body should be made public. It is apparent that this should be so, for the protection of the good name and reputation of the people, otherwise a condition would exist which the establishment and zealous maintenance of the grand jury was intended to prevent; namely, that of having

an individual publicly charged with misconduct without probable cause. If there is sufficient evidence of the commission of a crime, it is the duty of the grand jury to indict, that is, to take such action as will bring the party to trial; if there is not, the citizens are and should be protected against accusations by that body which do not mount up to a criminal offense.

In Ex parte Robinson, 165 So. 582, an Alabama case, a grand jury criticized a city commissioner and in their report stated that they failed to find evidence of such corruption as would warrant impeachment—but they proceeded to criticize the commissioner for his action. The commissioner moved the circuit court to expunge the report from the court records. The court refused and the case was brought to the Supreme Court of Alabama to require the court below to do so. In holding that the petitioner had the legal right to have the report expunged, the Supreme Court reviewed most of the cases on this subject. Some of those reported being—

* * * where the question has arisen on direct attack, as here, with one accord, the cases hold that the officer when he is thus criticized has the right in such a proceeding as this to have the report expunged. In one case it is thus expressed: "While it may be observed that the court has tolerated, rather than sanctioned, such presentments of things general, yet the grand jury should never, under cover of a presentment, present an individual in this manner for, if it have legal evidence of the commission of the crime, it should find an indictment against him upon which he could be held to answer, and, if it have no such evidence, it ought, in fairness, to be silent." In re Gardiner, 64 N.Y.S. 760 . . . It was also said: "It cannot be that it was ever contemplated that this body created for the protection of the citizen, was to have the power to set up its own standards of public or private morals, and to arraign citizens at the bar of public opinion, without responsibility for its abuse of that power, and without giving to the citizen the right to a trial upon the accusations." . . . In re Osborne, 125 N.Y.S. 313, 318, it is said: "So long as they are confined to matters of general interest they are regarded as harmless, even though a waste of time and effort, and after the ephemeral motive of the day has passed they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impugned, and he held to reprobation, without an opportunity to defend or protect his name and reputation."****

In a recent case, one of the nation's most eminent jurists and a past president of the American Bar Association, Chief Justice Vanderbilt, speaking for the Supreme Court of New Jersey in the Matter of Presentment by the Camden County Grand Jury, 89 A. 2d 416, said at page 444—

The acceptance of a presentment of public affairs, unlike that of an indictment, is not a ministerial act. The acceptance by the court of a

presentment of public affairs is a judicial act. A reading of it may lead the court to give the grand jury further instructions with respect to the matters presented, which in turn may lead to further grand jury action. The court may ask to see or have read to it the grand jury minutes on a question presented. Thus, for example, if in a particular instance a grand jury should so far forget its oath as to bring in a false presentment out of partisan motives, or indulge in personalities without basis, the assignment judge has it within his power to strike the presentment or as much thereof as is palpably untrue, his action in such an event being subject to review for abuse of discretion by the state or any aggrieved person, including any member of the grand jury making the presentment. The experience of three centuries with the institution, however, indicates that such instances will be most infrequent.

The foregoing decisions give a general outline of cases outside this state. Many other varieties of decisions could be included but it would be necessary to know the statutes of the various states to understand the effect of the decisions.

The Florida statutes include very few references to the powers of a grand jury. In Cotton v. State, 95 So. 668, the Florida Supreme Court stated that in Florida, the grand jury system was derived from the common law, but has been enlarged by statute.

Historically, our common law system began to take charge under Edward the third, about A.D. 1368, though some historians give an earlier period than the above date. Originally, the grand jury was both the accuser and trier of the facts, subsequently, the petit jury or trial jury was evolved or carried to England by the Normans.

When the grand jury became incorporated generally into the law of this country, it was strictly an inquisitorial body and except in special cases provided by the constitution, no one could be tried for felony except he be previously indicted by a grand jury. The grand jury common law function was to indict for a crime.

In the statute law of this state will be found certain references to the powers of the grand jury. For instance, Florida Statutes 1955, section 905.16—"*Duties of Grand Jurors*" provides—"The grand jurors shall inquire into every offense triable within the county for which any person has been held to answer, if an indictment has not been found or an information filed for such offense, and all other indictable offenses triable within the county which are presented to them by the prosecuting attorney or otherwise come to their knowledge."

Section 905.18 provides—"The court shall advise the grand jurors at all reasonable times regarding their legal duties, when

requested by them. But the court shall not, in its original charge, or thereafter restrict the grand jury in its investigation of any matter into which the grand jury is by law entitled to inquire."

Section 905.20 provides—"If a grand juror knows or has reason to believe that an indictable offense, triable within the county, has been committed, he shall declare such fact to his fellow jurors who shall investigate it. In such investigation the grand juror may be sworn as a witness."

The Florida Supreme Court in In re Report of Grand Jury, 11 So. 2d 316, 318 said—"* * * by their charge trial courts have directed the grand jury to investigate every offense that affected the morals, health, sanitation, and general welfare of the county. The charge also goes to the investigation of county institutions, buildings, offices, and officers and directs them to make due presentment concerning their physical, sanitary, and general condition. * * *" However, "* * * *They will not be permitted to single out persons in civil or official position to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism. Their investigation must be directed to detecting unlawful offenses.*" (Italics added.)

In Owens v. State, 59 So. 2d 254, our Supreme Court held that the Palm Beach County grand jury did not exceed its jurisdiction in making a report containing findings of fact that the town council showed gross incompetence in handling of taxpayers' money in relation to issuance of revenue bonds and award of contract for installation of water works.

The court in its opinion stated that public employees and officials, whether elective or appointed, have no proprietary interest in their office or employment, and it is not required that they be charged with a crime or irregular conduct but if they are incompetent or lax in the performance of the duty imposed upon them, whatever the delinquency may be, the grand jury has the right to investigate and make a fair report of its findings. The court further said—"The grand jury will not be permitted to censure a public official, impugn his motives, or hold him up to criticism without cause, and they cannot pry into one's personal affairs at the behest of designing groups."

It will thus be seen that in Florida the powers of a grand jury are not limited to investigating crime and making presentments therefor. A grand jury is clothed with much broader powers, which include investigation of the operation of city and county

governments and of the operation of county offices as well as the condition of county jails, hospitals and other public buildings.

In Ryon v. Shaw, 77 So. 2d 455, our Supreme Court held that grand jurors could not be held civilly liable for matters contained in a final report fairly made, and a statement that a commissary manager did not have the qualifications to head a department of child nutrition and education was not libelous. [6 Fla. Supp. 83]

In a case originating in Hillsborough County where the grand jury recommended to the governor that a constable be removed from office, reported in 11 So. 2d 316, a motion was filed by the said constable to expunge from the records of the court the report of the grand jury. Mr. Justice Terrell wrote the opinion of the court which held that the grand jury had the right to investigate the acts of the constable and recommend his removal by the governor. Certain parts of the report, however, were expunged by the court. In its opinion, the court said at page 318—

This interpretation clothes the grand jury with broad inquisitorial powers but no broader than judges have construed them to have since the law was promulgated. It would be a strange anomaly to hold that their power to indict or to recommend did not comport with their power to investigate. *There are some things however that are not within the category of grand jury powers.* They will not be permitted to single out persons in civil or official position to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism. Their investigation must be directed to detecting unlawful offenses; they will not be permitted to become the tool of blocs and groups to pry into personal affairs or to oppress some one. Neither will they be permitted to speak of the general qualification or moral fitness of one to hold an office or position but whether or not a county office is being conducted according to law and good morals is at all times within the jurisdiction of the grand jury to investigate. * * * (Italics added.)

We do not find that the grand jury report brought in question violates this rule except as to certain portions of the part quoted. It does not assail the character or qualification or assault the motives of Mr. Graves. It does not hold him up to scorn or ridicule but deals exclusively with his conduct as a county official and that on the basis of evidence taken. All that part of the report quoted beginning with the word "furthermore" on the fifth line and ending with the word "convicted" on the last line is improper, has no place in the report and is regarded as stricken.

From checking the report, it is found that the following was expunged—"Furthermore, we realize that the chances of conviction of a law enforcement officer for nonfeasance, misfeasance and malfeasance are small and every effort in this State, which has ever been heard of by any member of this Jury, has resulted only in

expense and delay. We further recognize and submit that there are many acts of misconduct which warrant the removal of an officer for which he might not be prosecuted, much less convicted."

In the above case Justices Buford and Adams dissented. Mr. Justice Buford wrote a dissenting opinion in which he cited many cases from other jurisdictions holding that the function of a grand jury is to indict if there is legal evidence of the commission of a crime—but not to present charges against an individual which impugn his motives and hold him up to ridicule without his having a chance to defend himself. His opinion ends with the following at page 321—"It appears to be the theory, upon which all the cases hereinbefore referred to were decided, that it is beyond the province of a grand jury to present an officer or other person by name and with words of censure and reprobation without presenting him for indictment, because to do so is to besmirch and hold to reprobation the accused without opportunity to defend or protect his name and reputation."

In the matter now before the court Boone D. Tillett, Jr. appeared before the grand jury as a witness, and based on his testimony two public officials and three employees of the sheriff's were indicted. Subsequently all of these officials were convicted by a trial jury. At the time the indictments were presented to the presiding circuit judge the presentment hereinbefore referred to, severely criticizing Mr. Tillett's motives, was also submitted.

The court is of the opinion that the grand jury did not have authority to criticize or condemn the methods used by, or the motives of, an individual witness—holding such witness up to ridicule and scorn.

It is therefore the order and judgment of the court that the following has no place in the said report and is regarded as stricken and expunged—

"With the above in mind, the grand jury finds that many of the facts revealed and the method used therefor were not performed primarily for clean government and the public good. On the contrary, we find that Boone D. Tillett, Jr., was primarily motivated in this case by his own political ambitions and malicious desire for revenge.

"We further find that, while the said Boone D. Tillett, Jr., was serving Polk County in the legislature, much of his time was spent in an effort to dig up facts unfavorable to the senator from Polk County, Florida, and every method used to dis-

credit the motives and actions of said senator; that the methods used by the said Boone D. Tillett, Jr., in his effort to discredit said senator were most reprehensible and should not be condoned by this jury or the public."