1998 OK 122

**Darrell G. STONECIPHER and Rhonda Long, Appellants,**

v.

**DISTRICT COURT OF PITTSBURG COUNTY, The Honorable Steven Taylor, District Judge, Appellee.**

No. 87898.

Supreme Court of Oklahoma.

Dec. 8, 1998.

Neil Whittington, Atoka, Oklahoma, Larry G. Grant, Antlers, Oklahoma, for the Appellants.

W.A. Drew Edmondson, Attorney General, Kent Sutton, Asst. Attorney General, O.R. Barris, III, Asst. Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Appellee.

SUMMERS, V.C.J.

¶ 1 A grand jury report, contrary to a statute regulating grand juries, criticized two public employees and recommended their termination from employment, but did not name them as subjects for indictment or ouster. May the employees successfully bring an action in mandamus to require the judge in charge of the grand jury to expunge from the report the language prohibited by statute? We hold that they may. We reverse the lower court's ruling, and remand with instructions.

¶ 2 Plaintiff Stonecipher was Chief Deputy Sheriff for Pittsburg County. Plaintiff Long was a supervisor in Child Welfare at the local Department of Human Services (DHS). The sad death of a Departmentally-placed child, whose name, Ryan Luke, is still familiar to most Oklahomans, resulted in intense scrutiny of the local sheriff's office and the DHS, among others. A grand jury was summoned and empaneled.

¶ 3 On July 7, 1995 the grand jury presented its final report. Among other subjects it discussed the Pittsburg County Sheriff's office and the Child Welfare Division of the local DHS office. The report concluded that the Sheriff should be indicted and ousted, but then went on to talk about Deputy Stonecipher. It criticized the Sheriff for his handling of two sexual harassment complaints against Stonecipher (which, according to the report, Stonecipher admitted to the grand jury) and recommended that Stonecipher, by name, be immediately terminated as Chief Deputy, as he was "a liability to Pittsburg County."

¶ 4 In addition the report scrutinized the Child Welfare Division of the local DHS. It recommended that Long, as supervisor over treatment, be immediately terminated. It stated that inasmuch as her position may have been politically obtained, and her judgment may have been influenced by politics, that she did not act in the best interests of

the deceased child. The grand jury did not return indictments nor ouster proceedings against Stonecipher or Long. The report was duly filed.

¶ 5 Oklahoma has, as do many states, a statute limiting grand jury comment as to persons neither indicted nor accused in ouster proceedings. Title 22 O.S.1991 § 346 provides:

> In addition to any indictments or accusations that may be returned, the grand jury, in their discretion, may make formal written reports as to the condition and operation of any public office or public institution investigated by them. *No such report shall charge any public officer, or other person with willful misconduct or malfeasance, nor reflect on the management of any public office as being willful and corrupt misconduct.* It being the intent of this section to preserve to every person the right to meet his accusers in a court of competent jurisdiction and be heard, in open court, in his defense. (Emphasis added.)

¶ 6 Armed with this statute, Stonecipher on June 12, 1996 went to the local district court for a Writ of Mandamus, or in the alternative, Motion for Expungement of a Portion of the Grand Jury Report. On July 2 Long joined him, without objection, as a party plaintiff. There was a hearing that date, at which both plaintiffs testified that their careers had been adversely affected and that they and their families had suffered emotionally due to the material in the report. An assistant Attorney General appeared at the hearing in opposition to the relief requested.

¶ 7 The Respondent Judge of the District Court, after hearing testimony and argument of counsel, denied the Petition and Motion to Expunge. He found, first, that the report did not violate the intent of § 346. He found that the references to the two complaining individuals were nothing more than the grand jury's way of informing the Sheriff and the DHS of the nature of its charges and what changes should be made. He further found that even if the report did violate § 346 he had no authority to edit or rewrite a report that had been on file for nearly a year.

He made no reference to laches or any comparable language of time-bar. The Plaintiffs appealed.

¶ 8 The Court of Civil Appeals disagreed with the trial court as to the applicability of § 346, holding that the use of Plaintiffs' names in the report was a violation. It held, however, that relief was barred by laches. It further held that the trial court had no authority to edit or take from the filed document. It did not get to the issue of whether the trial court has the power to edit or review a tendered, non-filed, grand jury report. We have granted certiorari.

## I. THE DEFENSE OF LACHES

¶ 9 "Mandamus" is a special proceeding addressing itself to the equity powers and conscience of a court or judge for the enforcement of a clear legal right for which the law provides no adequate remedy. *State ex rel. Westerheide v. Shilling,* 190 Okla. 305, 123 P.2d 674, 679 (Okla.1942). There is no statute of limitations as such to mandamus, *Stephenson v. Bonney,* 202 Okla. 549, 216 P.2d 315, 318 (Okla.1950), but mandamus will not issue when barred by laches. *Young v. Kirk,* 1955 OK 177, 292 P.2d 1009, 1011–1012. We have, however, applied statutes of limitations to mandamus proceedings "by analogy" where there is an applicable statute of limitations for a legal proceeding involving a similar cause of action, which thus governs the applicability of laches. *Hutchman v. Parkinson,* 199 Okla. 494, 187 P.2d 999, 1002 (Okla.1947); *Board of Education v. Johnston,* 189 Okla. 172, 115 P.2d 132, 133 (Okla. 1941). This application is consistent with our opinions explaining that in an equitable proceeding no strict application of limitations will occur, but a court may, by analogy, apply in such a proceeding the limitations period for a similar legal action. *See, e.g., Baker v. Massey,* 1977 OK 170, n. 12, 569 P.2d 987, 992.

¶ 10 Laches is an equitable defense to stale claims. *B & M Intern. Trading Co. v. Woodie Ayers Chevrolet, Inc.,* 1988 OK 133, ¶¶ 9–10, 765 P.2d 782, 783. It is an affirmative defense whereby the person relying on it has the burden of proof. *Sooner*

*Federal Savings & Loan v. Smoot,* 1995 OK 31, ¶ 21, 894 P.2d 1082, 1090. The statute of limitations is also an affirmative defense, *Red Eagle v. Free,* 191 Okla. 385, 130 P.2d 308, 311 (Okla.1942). Affirmative defenses such as laches and statutes of limitation must be raised by the parties or are waived. *Furr v. Thomas,* 1991 OK 93, ¶ 23, 817 P.2d 1268, 1272.

¶ 11 We have reviewed the pleadings in the trial court, together with the transcribed statements and arguments of counsel. We do not find any reference to the defense of laches or to a time-bar by any other name. The first time it is raised as a defense is in Respondent's brief on appeal. Matters not first presented to the trial court for resolution are generally not considered on appeal. *Steiger v. City National Bank,* 1967 OK 41, 424 P.2d 69, 72. This is particularly true as to affirmative defenses not raised below. See *Reddell v. Johnson,* 1997 OK 86, 942 P.2d 200, 202, 203, (appellate court could not raise for first time the statute of limitations.) In the event the eleven month delay in filing suit might have been a defense, we deem it waived at this point, and move on.

## II. THE GRAND JURY REPORT AND THE STATUTE

¶ 12 The trial court and appellate division differed on whether the grand jury violated 22 O.S.1991 § 346. We believe the Court of Civil Appeals was correct. The report not only disclosed that Stonecipher had been the subject of sexual harassment complaints, but that he had admitted to them, and should be fired as "a liability to Pittsburg County." We believe this language amounts to a charge of "willful misconduct", publication of which is prohibited by law.

¶ 13 As to Long, the report publicized her job performance as being so politically influenced that she did not act in the best interests of the child, and that she likewise should be immediately terminated. Again, we find this language suggestive of willful and corrupt misconduct, and within the prohibitions of the statute.

¶ 14 We need not speculate on the public policy behind § 346; it is right there in the final sentence:

It being the intent of this section to preserve to every person the right to meet his accusers in a court of competent jurisdiction and be heard, in open court, in his defense.

The public policy as so codified was ignored by the grand jury. This statute uses the word "shall", and we have often explained that this word indicates a mandatory duty, unless otherwise is indicated by the context in which it appears. *Minie v. Hudson,* 1997 OK 26, n. 13, 934 P.2d 1082, 1085, *citing, Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, 619 P.2d 869, 871. *See Key v. Owens,* 1996 OK CIV APP 150, ¶ 16, 935 P.2d 1189, (approved for publication by the Supreme Court), where that court explained that the word "shall" is mandatory in the constitutional provision requiring a grand jury upon the filing of a petition with the appropriate number of signatures. We conclude, in light of the statutory language that § 346 is intended to effectuate a person's right to confront that person's accusers, the statutory prohibition included therein is mandatory. The final question, then, is whether the courts may edit or expunge portions of a grand jury report once filed.

## III. EXPUNGEMENT: THE COURTS AND THE GRAND JURY

¶ 15 In *Burke v. Territory,* 2 Okla. 499, 37 P. 829 (Okla.1894), the Court held that a trial court has authority to require that a grand jury report be in the proper statutory form before it can be filed. There, the grand jury returned a report which contained "matter entirely foreign to the subject of said report and return, which foreign matter cast mere reflections upon certain individuals and persons." *Id.* at 830. The trial court reviewed the report before releasing it, and found it to contain this improper material. This action was criticized by a local newspaper. The newspaper and several individuals were held in contempt and were fined. The fines were upheld, because this Court determined that the trial court's actions were not only proper but necessary:

This matter was before the court for its consideration.... The fact that the court afterwards determined that the return or presentment, or report of the grand jury could not be received gave the court nonetheless jurisdiction of the matter, and made it nonetheless a matter pending in court ... There was nothing improper or unusual in the court's taking time to consider whether an instrument presented by the grand jury should be accepted by the court. *The court is not bound to receive and accept from the grand jury everything which it may present. One of the legal and judicial steps to be taken before any return of the grand jury becomes an indictment, accusation, or report is that it must be presented to and received by the court; and the court has a right, before accepting and receiving it, to return it to the grand jury, or to receive it, as the court thinks proper. This is required judicial action....*

*Id.* at 836 (emphasis added). Thus, under the long-standing rule of *Burke,* a trial court has authority to refuse a report of a grand jury or to require that it be submitted in the proper form.

 ¶ 16 *Burke* is not determinative of the present case, because here the trial court accepted the report without requiring that it be in statutory form. But it is informative insofar as it explained that a trial court has authority over a grand jury report. The failure to exercise *Burke*-type authority here has resulted in the plaintiffs being accused of willful and improper conduct without having any avenue by which to confront their accusers. It is exactly this concern which caused the landmark case of *Wood v. Hughes,* 9 N.Y.2d 144, 212 N.Y.S.2d 33, 173 N.E.2d 21 (1961), to explain the necessity of a trial court's review of a grand jury report:

> [T]he grand jury may not, under cover of the power to inquire, employ a report to accuse an individual of misconduct or laxity in public office any more than it may do so to charge him with misbehavior in private life. The grand jury's historic function, as embodied in our statute, is to determine whether there is evidence establishing the commission of a crime. If there is such

evidence, the grand jury ought to find an indictment. *If, however, there is no such evidence, it must dismiss the charges or remain silent* ... A grand jury report which is a judicial document obviously differs radically from newspaper *charges of misconduct carries the same sense of authoritative condemnation as an indictment does, without however, according the accused the benefit of the protections accorded to one who is indicted.*

*Id.* 212 N.Y.S.2d 33, 173 N.E.2d at 25–26, (emphasis added). *See also* Kuh, *The Grand Jury "Presentment": Foul Blow or Fair Play,* 55 Colum. L.Rev. 1103 (1955).

¶ 17 Although never before addressed by this Court, other states have held that a court has the authority to expunge a grand jury report, or parts thereof, which do not conform with statutory or constitutional mandates. For example in *Ex Parte Robinson,* 231 Ala. 503, 165 So. 582 (1936), the Alabama Supreme Court held that a trial court had the power to expunge a grand jury report which contained criticisms of official acts of a city commissioner, but did not contain any indictments. The court stated that if a indictment is not returned, fairness requires the grand jury to remain silent. *Id.* 165 So. at 583. The court concluded that the criticized city official had a clear right to expungement of the report. *Id. See also Bennett v. Kalamazoo Circuit Judge,* 183 Mich. 200, 150 N.W. 141 (1914), (prosecuting attorney had right to expungement of grand jury report that contained criticizing information but did not contain an indictment or formal charge); *In re Grand Jury Report, Petition of Williams,* 204 Wis. 409, 235 N.W. 789 (1931), (grand jury report which contained criticism without a formal charge was not authorized and should be stricken).

¶ 18 In *Barber v. Interim Report of the Grand Jury Spring Term 1995,* 689 So.2d 1182 (Fla.Dist.Ct.App.1997), the grand jury filed a report which contained statements about a police officer. The report stated that the officer's shooting of a citizen was not criminal but was perhaps the result of negligence and bad judgment. The report did not indict the officer. The officer sought to have these statements expunged from the report.

A Florida statute required that the report be kept confidential until the individual had opportunity to request expungement. In discussing the purpose of the statute, the Florida court stated that "[t]he policy behind the statute is to give a person not charged with a crime the chance to prevent the publication of 'improper and unlawful' material":

> [W]hile one charged with the commission of a crime as a result of [the grand jury] process has a full opportunity for public clarification of misleading data and personal vindication through a public trial, no comparable means of vindication exists for one whose character is impugned in a report unaccompanied by indictment.

*Id.* at 1184, *quoting, Miami Herald Publishing Co. v. Marko,* 352 So.2d 518, 520–21 (Fla.1977).

¶ 19 This same policy is expressly stated in our statute: "to preserve to every person the right to meet his accusers in a court of competent jurisdiction and be heard, in open court, in his defense." 22 O.S.1991 § 346. Our courts have the right and the duty to review the grand jury report before its filing. If it is not in the proper form because it contains unauthorized accusations, the court has a duty to expunge such material in order to safeguard the individual's rights of confrontation. When, as here, the trial court fails to do so, it may upon Petition for Writ of Mandamus do so, and if it does not this Court may require expungement so as to conform with the statute.

¶ 20 Upon review of the grand jury report, we direct that portions hereinafter listed be expunged from the report: The second of three paragraphs in Section XI, (h); subparagraphs (*o*) and (p) of Section XII; and the sentence following Section XII(p).

¶ 21 The opinion of the Court of Civil Appeals is vacated, the judgment of the District Court is reversed, and this matter is remanded to the District Court of Pittsburg County with direction to expunge the portions of the grand jury report as required by this opinion.

¶ 22 KAUGER, C.J., LAVENDER, SIMMS, HARGRAVE, ALMA WILSON, and WATT, JJ., concur.

¶ 23 OPALA, J., concurs in part, dissents in part.

¶ 24 HODGES, J., dissents.