2010 OK 73

**SURETY BAIL BONDSMEN OF OKLAHOMA, INC., an Oklahoma corporation, Cathy Boyd, an individual, Plaintiffs,**

**International Fidelity Insurance Co., a New Jersey corporation, Allegheny Casualty Company, a Pennsylvania corporation, and American Surety Company, an Indiana corporation, Plaintiff Intervenors/Appellants,**

v.

**The INSURANCE COMMISSIONER of the State of Oklahoma, Defendant/Appellee,**

and

**Carisa Carrasco, Defendant Intervenor/Appellee.**

No. 106,025.

Supreme Court of Oklahoma.

Oct. 19, 2010.

As Corrected Nov. 2, 2010.

Rehearing Denied Nov. 29, 2010.

Mark T. Hamby and Gene C. Howard, Bonham & Howard, P.L.L.C., Tulsa, OK, for the appellants.

Sandra White Lavenue, Oklahoma City, OK, for appellee Oklahoma Insurance Department.

David H. Cole, Majorie Galt, Ronald L. Wallace, Oklahoma City, Oklahoma, for appellee Carisa Carrasco.[1]

TAYLOR, V.C.J.

¶ 1 The dispositive questions presented in this appeal are whether title 59, section 1320(B) of the 2001 Oklahoma Statutes [2] limits a professional bondsman to writing bonds on no more than ten defendants a year in a county in which the professional bondsman is not registered, and, if so, whether a professional bondsman can circumvent this limitation by employing a surety bondsman to act on the professional bondsman's behalf pursuant to a power of attorney. We answer the

---

1. In the administrative proceedings, in the district court, and in the appellate courts, the style contained the following designation: "Carisa Carrasco, et al., Third–Party Intervenors/Appellees." These third-party intervenors (defendant intervenors) have attempted to intervene as defendants and should be distinguished from the intervenors who intervened as plaintiffs (plaintiff intervenors). The record on appeal does not contain a motion to intervene on behalf of the defendant intervenors. Except for the name of Carisa Carrasco (Carrasco or defendant intervenor), the defendant intervenors' names appear nowhere in the record on appeal. This Court directed the plaintiff intervenors to disclose the names of all of the defendant intervenors. The plaintiff intervenors responded that the names of the defendant intervenors are not part of the record and asked that the term "et al." be stricken from the style.

We then directed the defendant intervenors to respond and show cause why the term "et al." should not be stricken. In their response, they failed to show that any defendant intervenor, other than Carrasco, is a proper party defendant to the case. Title 12, section 2010(A) of the Oklahoma Statutes provides: "[A] motion and petition in intervention shall include the names of the intervenors and the adverse parties." No such motion appears in the record before this Court.

The defendant intervenors admit that their names, other than Carrasco, are not included in the record and were not filed in this case. The defendant intervenors have failed to present any legal basis upon which this Court has authority to include the unnamed defendant intervenors as parties to this suit. The term "et al.," is stricken from the style, and parties' titles are changed to clarify their status in the district court and in this Court.

2. This opinion references the 2001 Oklahoma Statutes when referring to provisions of the Code unless otherwise specifically noted. Amendments to the Code after 2001 do not bear on our analysis.

first question in the affirmative and the second question in the negative.

## I. HISTORY

¶ 2 In 1984, the Oklahoma Legislature amended the Bail Bondsmen Code, 59 O.S. 2001, §§ 1301–1340, to include a provision limiting a bondsman to writing "bonds on no more than ten defendants" a year in a county in which the bondsman was not registered. 1984 Okla. Sess. Laws 804, ch. 225, § 21 (now codified at 59 O.S.2001, § 1320(B)). This provision is commonly known as the ten bond rule. In 1990, an attorney asked the Oklahoma Insurance Commissioner (Commissioner) to interpret title 59, section 1320(B).

¶ 3 In a letter addressed to the attorney and dated January 26, 1990, the assistant general counsel of the Oklahoma Department of Insurance (Department) responded:

[I]t is the informal opinion of the Oklahoma Insurance Commissioner that a professional bail bondsman may not write on more than ten (10) defendants per year in those counties in which he neither resides nor offices. However, the professional bail bondsman may appoint licensed surety agents to act in his behalf. Those surety agents may write an unlimited number of bonds in the county of their residence or office, but not both, as long as the amount written, coupled with that which the professional bondsman and his other appointed agents have written, does not exceed the professional bail bondsman's liability writing limit with the Oklahoma Insurance Commission.

Under this informal opinion, a professional bondsman is prohibited from writing bonds on more than ten defendants a year in a county in which the professional bondsman neither resides nor offices unless he authorizes a surety bondsman to act as his agent pursuant to a power of attorney.

¶ 4 Surety Bail Bondsmen of Oklahoma, Inc. and Cathy Boyd (collectively, plaintiffs) filed a complaint with the Department.[3] They then filed a motion for summary adjudication, asking for a ruling "[t]hat any bonds written under the authority of a power of attorney are subject to the legal limitations imposed upon the principal bondsman, including the ten defendant out-of-county limit contained in 59 O.S.Supp.1989, § 1320." The plaintiff intervenors, i.e., the International Fidelity Insurance Company, Allegheny Casualty Company, and American Surety Company, filed a motion to intervene and to be added as parties to the petition for summary adjudication. The motion was granted. The Commissioner and Carrasco responded to the motion for summary adjudication.

¶ 5 On April 7, 2005, the Department's administrative law judge (ALJ) held a hearing and, on June 23, 2005, issued an order. The ALJ stated the Commissioner's position regarding title 59, section 1320(B) as:

[A] professional bail bondsman may appoint licensed surety bail bondsmen to act in his behalf. Those surety bail bondsmen may write an unlimited number of bonds in their county of registration, as long as the amounts written, coupled with that which the professional bondsman and his other appointed bondsmen have written, does not exceed the professional bail bondsman's liability writing limit with the Oklahoma Insurance Commissioner.

The ALJ succinctly stated the Commissioner's reasoning as it is the surety bondsman who writes the bond because the surety bail bondsman prepares and completes the appearance bond and files it with the court. The ALJ found that section 1320(B) is ambiguous and that the Commissioner's interpretation of section 1320(B) is reasonable.

¶ 6 The plaintiffs filed a petition appealing the agency's ruling and filed a brief in the

---

3. The complaint is not a part of the record on appeal. However, the parties do not dispute that Surety Bail Bondsmen of Oklahoma, Inc. and Cathy Boyd filed the complaint with the Department, and the style of the proceeding before the Department names them as the complainants.

The district court found that Surety Bail Bondsmen of Oklahoma, Inc. "is not a licensed

'Insurer', as defined in 59 O.S. Sec. 1301(B)(3)" and not eligible to be licensed as a bail bondsmen, that Cathy Boyd surrendered her Oklahoma state bail bond license on April 1, 2008, and that neither Surety Bail Bondsmen of Oklahoma, Inc. nor Cathy Boyd have participated or been represented in this lawsuit since June 7, 2006.

district court.[4] The plaintiffs' positions in its brief before the district court, among other things, were (1) title 59, section 1320(B) is unambiguous and limits a professional bondsman's authority even when acting through a surety bondsman under a power of attorney; (2) the surety bondsman, as an agent for the professional bondsman, is subject to the legal limitations imposed on the professional bondsman; (3) the professional bondsman, not the surety bondsman, writes the bonds contrary to the Commissioner's reasoning; and (4) the Commissioner's construction of section 1320(B), even if long-standing, is not controlling. The Commissioner and Carras-

co filed responsive briefs. The Commissioner urged that her construction of section 1320(B) is reasonable and entitled to deference and that the agency's ruling should be upheld. Carrasco merely referenced the response filed in the administrative proceedings.

¶ 7 The district court entered finding of facts and conclusions of law on June 16, 2008, and, on June 18, 2008, entered judgment affirming the agency's decision in favor of the Commissioner and Carrasco. The district court found (1) when title 59, sections 1301(B)(5) [5] and (10),[6] 1306(A)(2)(3) and (4),[7] 1314(B)(2),[8] 1316 [9] and 1321 [10] are read to-

---

4. The parties, the district court, and the Court of Civil Appeals treated the petition as a quest for declaratory judgment, 12 O.S.2001, §§ 1651–1657, rather than an appeal from an agency decision. Title 75, section 322 of the Oklahoma Statutes, which is part of the Administrative Procedures Act (APA), 75 O.S.2001, §§ 250–323, addresses a reviewing court's authority in affirming, setting aside, modifying, or reversing an agency's decision coming within its purview. There is no provision in the APA for summary judgment in the district court when it is setting as a court reviewing an agency's decision. We therefore treat the summary judgment motion and the responses as briefs filed in the district court in review of the agency's ruling, and they are denoted herein as briefs before the district court.

5. Title 59, section 1301(B)(5) of the Oklahoma Statutes provides:

"Surety bondsman means any person who has been approved by the Commissioner and appointed by an insurer or a professional bondsman, by power of attorney, to execute or countersign bail bonds for the insurer or a professional bondsman, in connection with judicial proceedings and charges and receives money for his services[.]

6. Title 59, section 1301(B)(10) of the Oklahoma Statutes provides:

Escrow deposit means cash or valuable security deposited by an insurer of a surety bondsman or professional bondsman to secure the face amount of forfeiture pending appeal....

7. The district court cited "1306(2)(3) & (4)." We assume that the district court intended to cite "1306(A)(2),(3), and (4)" because subsections B, C, and D of section 1306 do not contain subsections 2, 3, and 4. Title 59, section 1306(A)(2), (3), and (4) of the Oklahoma Statutes and amendments thereto dictate the monetary deposit required of a professional bondsman.

8. Title 59, section 1314(B)(2) of the Oklahoma Statutes provides:

Professional bondsmen shall submit by mail with return receipt requested notarized monthly reports showing total current liabilities, all bonds written during the month by the professional bondsman and by any licensed bondsman who may countersign for him or her, all bonds terminated during the month, and the total liability and a list of all bondsmen currently employed by such professional bondsmen....

9. Title 59, section 1316 of the Oklahoma Statutes and amendments thereto provides in relevant part: (1) a bail bondsman cannot give a power of attorney to any person who is not a licensed bondsman; (2) before a bondsman can write bonds on behalf of a professional bondsman, the agreement between the professional bondsman and the employed bondsman must be submitted to the Commissioner; (3) the suspension of a professional bondsman or the surrender of a professional bondsman's license results in the suspension of the professional bondsman's agents unless the professional bondsman's license is reinstated within twenty-four hours; and (4) all surety bondsman must attach the power of attorney to the appearance bond.

10. Title 59, section 1321 of the Oklahoma Statutes provides:

Each and every surety for the release of a person on bail shall be qualified as:
(1) An insurer and represented by a surety bondsman or bondsmen; or
(2) A professional bondsman properly qualified and approved by the Insurance Commissioner; or
(3) A cash bondsman; or
(4) A property bondsman; or
(5) A natural person who has reached the age of twenty-one (21) years, a citizen of the United States and a bona fide resident of Oklahoma for a period of six (6) months immediately last past and who holds record title to property in Oklahoma, cash or other things of value, acceptable to the proper authority approving the bail bond.

gether, it is clear that the Legislature intended for the power of attorney to be a grant of the use of a monetary amount of surety and not a grant for a surety bondsman to use the professional bondsman's license, (2) "[t]he Surety Bondsman may write an unlimited number of bonds in the county where he/she resides or offices, as long as the amount written by the Surety Bondsman, added to that amount written by the Professional Bondsman, does not exceed the Professional Bondsman's monetary writing limits established by the Insurance Department," (3) the Commissioner's construction of title 59, section 1320(B) is entitled to deference, and (4) the Commissioner's construction of section 1320(B) does not result in a violation of the Equal Protection Clauses of the United States or Oklahoma constitutions.

¶ 8 The plaintiff intervenors appealed to this Court. The plaintiff intervenors, Carrasco, and the Commissioner filed briefs in this Court; and the appeal was assigned to the Court of Civil Appeals for disposition. The Court of Civil Appeals found that title 59, section 1320(B) is unambiguous and that it does not limit a surety bondsman to writing only ten bonds a year for a professional bondsman in the county where the surety bondsman, but not the professional bondsman, is "registered." The plaintiff intervenors filed a petition for writ of certiorari. This Court granted the writ.

## II. ANALYSIS

■ ¶ 9 The questions before us are ones of statutory construction which are questions of law subject to *de novo* review in the appellate court. *St. John Medical Center v. Bilby*, 2007 OK 37, ¶ 2, 160 P.3d 978, 979. *De novo* review is plenary, independent, and non-deferential to a lower court's decision. *Id.*

¶ 10 The Bail Bondsmen Code provides for four types of bondsmen: surety bondsmen, professional bondsmen, property bondsmen, and cash bondsmen. 59 O.S.2001, § 1301(A)(5), (7), (8), (9). These four types of bondsmen constitute the group known as bail bondsmen. *Id.* § 1301(A)(4). The surety bondsmen and professional bondsmen are the only bondsmen involved in this dispute.

¶ 11 A professional bondsman is a person who pledges cash as security for a bail bond. *Id.* § 1301(B)(7). A professional bondsman must be approved by the Commissioner. *Id.* Additionally, a professional bondsman must submit a financial statement showing a net worth of at least $50,000.00 and make a deposit, either in cash or in the form of an annuity, with the Commissioner. *Id.* § 1306(A)(2), (3).

¶ 12 Under the relevant provisions, a professional bondsman acts as the surety on a bail bond. *Id.* § 1321. The professional bondsman may transact the issuance of a bond directly or may do so by appointing a surety bondsman as an agent to act on the professional bondsman's behalf. *Id.* 1316(A). If the professional bondsman appoints a surety bondsman to act as an agent, the professional bondsman must file a notice of the appointment with the Commissioner, pay a $10.00 fee, and submit the agreement between the professional bondsman and the surety bondsman to the Commissioner. *Id.* §§ 1316(A)(1), 1317(A). The professional bondsman must notify the Commissioner when an agreement is canceled. *Id.* § 1317(A).

¶ 13 A surety bondsman is a person who is approved by the Commissioner and who is "appointed by an insurer or professional bondsman, by power of attorney." *Id.* § 1301(B)(5). A surety bondsman executes or countersigns bail bonds for the insurer or professional bondsman. *Id.* A surety bondsman is not authorized to act as a bondsman except when acting as an agent for an insurer or professional bondsman pursuant to a power of attorney. *Id.* Further a surety bondsman cannot be the surety for the release of a person on bail. *Id.* § 1321.

¶ 14 The Bail Bondsman Code was originally enacted in 1965. 1965 Okla. Sess. Laws 305–317, ch. 184. As first enacted, the Code did not contain a ten bond rule. Chapter 184 of the 1965 session law at section 20 provided, in part:

No bail bondsman shall become a surety on an undertaking unless he has first registered his license in the office of the sheriff and with the clerk of the district court

in the county in which the bondsman resides and he may then become surety in any other county upon presenting to the official required to approve the sufficiency of bail, a certificate of such registration. A surety bondsman shall also file a certified copy of his appointment by power of attorney from each insurer which he represents as agent with each of said officers.

Under this provision, a bail bondsman acting as a surety, that is a professional bondsman but not a surety bondsman, is required to register his license in the county of his residence. Also after registering his license, a professional bondsman could act as a surety in the resident county and all other counties throughout the state without a numerical limitation on the bonds that could be written.

■ ¶ 15 Apparently a problem arose with professional bondsmen not being accessible in the counties in which they were acting as sureties. So in 1984 the Legislature amended title 59, section 1320(A) and (B). 1984 Okla. Sess. Laws 804–805, ch. 225, § 21. The 1984 amendments to section 1320 provide in part:

A. . . . In any county in which a bondsman chooses to write surety, he shall also provide the court clerk with proof of constant accessibility in the county. Accessibility as herein required shall mean that the bondsman must have a duly authorized agent within the county with authority to make and execute a bail bond. . . .

B. Notwithstanding the foregoing provisions of this section, a bondsman may write bonds on no more than ten (10) defendants per year in each county in which he has not duly registered his license with the court clerk, by advising the court clerk in writing of his intention to do such writing.

59 O.S.Supp.1984, § 1320 (also found at 1984 Okla. Sess. Laws 804–805, ch. 225, § 21). These amendments to section 1320 indicate a clear legislative intent to assure that a professional bondsman is accessible by and through a duly authorized agent in the counties wherein he acts as a surety but does not office or reside. These amendments also show a legislative intent to place a ten bond limit on the professional bondsman's authority whether in person or acting through an agent.

¶ 16 In 1987, the Legislature again attempted to remedy the problems with professional bondsmen's absence in the counties wherein they were acting as sureties. *See* 1987 Okla. Sess. Laws 1277, ch. 211, § 18. The 1987 Legislature required a professional bondsman to provide proof of his residency in the county or proof that he offices in the county wherein he registers his license. *Id.* In the counties wherein he was not registered but writing bonds, in addition to advising the court clerk of his intention to write bonds, a professional bondsman was required to file a certified copy of his license with the court clerk.

¶ 17 Section 1320 of title 59 was again amended in 1989. 1989 Okla. Sess. Laws 795, ch. 257, § 9. In 1989, the Legislature clarified that a professional bondsman could register his license in either the county where he resides or offices, but not both. It also changed section 1320(B) of title 59 to provide:

Notwithstanding the foregoing provisions of this section, a bondsman may write bonds on no more than ten defendants per year in each of the remaining seventy-six counties of this state in which the bondsman cannot register his license. . . .

These two amendments to section 1320(B) are tied to writing bonds and clearly show the Legislature's intent to limit a professional bondsman acting as a surety to writing on no more than ten defendants a year in any county other than the one in which the professional bondsman is registered.

¶ 18 In 1992, the ten bond rule was again amended and currently provides:

Notwithstanding the foregoing provisions of this section, a bondsman may write bonds on no more than ten defendants per year in each of the remaining seventy-six counties of this state in which the bondsman cannot register his license. Provided, however, a bondsman shall not be limited to writing bonds on only ten defendants per year in a county which does not have a licensed bondsman registered in

said county. The bondsman shall advise the court clerk of each such county in writing of his intention to write bonds in the county and shall file a certified copy of his license with and pay a fee of Ten Dollars ($10.00) to each such court clerk. 1992 Okla. Sess. Laws 306, ch. 98, § 7 (codified at 59 O.S.2001, § 1320(B)).

¶ 19 In summary, the Legislature began with an open policy of allowing professional bondsmen to act as sureties in all counties. The Legislature in 1984 severely limited a professional bondsman's ability to act as a surety on a bond outside the county in which the professional bondsman was registered by injecting an accessibility factor and the ten bond rule. Again in 1987 because of apparent problems with professional bondsmen acting as sureties outside of the county where they were registered, the Legislature required them to provide proof of their registration in counties where they were not allowed to register.[11]

¶ 20 Under the current section 1320(A), a professional bondsman must *register* his license in the sheriff's office and the court clerk's office in either the county in which he offices or in which he resides but not both. A surety bondsman is not required to *register* his license in any county office, *see id.* §§ 1320(A), 1321, but he must attach a copy of the power of attorney from a professional bondsman to each appearance bond he files with the court clerk. *Id.* § 1316(B)(D). When a dispute arises, the surety bondsman who negotiated and posted the bond is deemed to represent the professional bonds-

man granting the power of attorney. *Id.* § 1317(D).[12]

¶ 21 By beginning with the words "[n]otwithstanding the foregoing provisions of this section," section 1320(B) references and incorporates section 1320(A) of title 59. The first sentence of section 1320(B) continues with "a bondsman may write bonds on no more than ten defendants per year in each of the remaining seventy-six counties of this state in which the bondsman *cannot register his license.*" (Emphasis added.) Section 1320(A) requires only bondsmen acting as sureties to register their licenses and, thus, section 1320(B)'s ten bond rule is applicable to bondsmen who are sureties, in this case professional bondsmen.[13] Consistent with the Commissioner's construction and the legislative history, section 1320(B) unambiguously limits a professional bondsman to writing on no more than ten defendants in a county where the professional bondsman is not registered if the county has other registered bondsmen.

¶ 22 We next turn to the part of the Commissioner's construction which would allow professional bondsmen to circumvent title 59, section 1320(B) by appointing a surety bondsman to act on the professional bondsman's behalf pursuant to a power of attorney. It is clear that the Legislature understood the common law of agency and incorporated it into the Bail Bondsmen Code. The Legislature's incorporation of the common law into the Code is consistent with title 12, section 2 of the Oklahoma Statutes. Section 2 provides: "The common law remains in force in

11. In 1993, the Department adopted rule 365:25–5–38 entitled "Ten defendant limit" without mentioning the Commissioner's 1990 informal opinion. Section 365:25–5–38 provides:
  Pursuant to 59 O.S. § 1320, a bondsman is authorized to write bonds on up to ten defendants per year, October 1 through September 30, in each county outside his resident county. For purposes of determining the ten defendants, the bondsman shall consider each date a bond or bonds are written on a defendant as being one of the ten defendants, not withstanding any previous bonds which have been written on that same individual. The ten defendant limit does not apply in counties without a registered bondsman in said county.

12. Only when acting as an insurer's agent is a surety bondsman required to file a certified copy

of the power of attorney appointment with the sheriff's office and the court clerk's office. *Id.* § 1320(A). In filing a power of appointment from an insurer, a surety bondsman must be licensed and pay a fee of $10.00 to the district court clerk in each county in which he files a power of attorney. *Id.* § 1320(A).

13. The Court of Civil Appeals' opinion states: "All bondsmen must register." This incorrect statement leads the Court of Civil Appeals to the wrong conclusion. Title 59, section 1320(A) requires only a bondsman acting as surety to register his license. The title given a surety bondsman is confusing. A surety bondsman never acts as a surety.

aid of general statutes." Thus, the statutes and the common law are to be read together as one harmonious whole. *Lierly v. Tidewater Petroleum Corp.,* 2006 OK 47, n. 8, 139 P.3d 897, 905 n. 8.

¶ 23 Under the common law, a relationship of agency is established when two parties agree that one, the agent, shall act on behalf and subject to the control of the other, the principal. Restatement (Third) of Agency § 1.01 (2005). "An agency relationship generally exists if two parties agree one is to act for the other." *McGee v. Alexander,* 2001 OK 78, ¶ 29, 37 P.3d 800, 807. Under the Bail Bondsman Code, a professional bondsman and surety bondsman agree that the surety bondsman will act on behalf of and under the control of the professional bondsman pursuant to a power of attorney. 59 O.S.2001, § 1301(B)(5). The surety bondsman can only sign bail bonds after being appointed to do so pursuant to a power of attorney to act on behalf of an insurer or a professional bondsman. 59 O.S.2001, §§ 1301(B)(5), 1316(A). A surety bondsman's license gives no authority to execute bonds independent of an insurer or professional bondsman appointing him under a power of attorney. *See id.* § 1301(A)(5). Under the statutory scheme, a surety bondsman executes or countersigns bonds on behalf of an insurer or a professional bondsman under the umbrella of the principal's license, both the monetary aspect and the authority to execute bonds. Contrary to the Commissioner's position, the surety bondsman in this agency relationship is not authorized to execute bonds based on his license only. *Id.* § 1301(A)(5).

¶ 24 In measuring a surety bondsman's authority and in construing title 59, section 1320(B), we are also guided by the common-law rule that "[t]he capacity to do a legally consequential act by means of an agent is coextensive with the principal's capacity to do the act in person." Restatement (Third) of Agency § 3.04 (2005). In other words, a principal cannot do an act through an agent which the principal could not do directly. *See id.* § 3.04 Reporter's Notes (b). Thus, the surety bondsman's authority to write bonds as a professional bondsman's agent is coextensive with the professional bondsman's authority.

¶ 25 Here, a professional bondsman is limited to writing "bonds on no more than ten defendants per year in each of the remaining seventy-six counties of this state in which the bondsman cannot register his license." 59 O.S.2001, § 1320(B). Because of this limitation on a professional bondsman, he cannot delegate the power to a surety bondsman to write more than ten bonds a year in a county where the professional bondsman is not registered. To rule otherwise would allow a professional bondsman to circumvent section 1320(B)'s ten bond rule by delegating authority that the professional bondsman does not possess.

¶ 26 In further support of this conclusion, under the rules of statutory construction, we presume that the Legislature has not done a vain and useless act. *Strong v. Laubach,* 2004 OK 21, ¶ 11, 89 P.3d 1066, 1070. It is nonsensical to construe title 59, section 1320(B) as placing limitation on the number of bonds a professional bondsman can write in a county wherein he is not registered and then construe the same provision so as to let him avoid the limitation by appointing a surety bondsman as his agent.

¶ 27 The Commissioner contends that she is authorized to construe the Bail Bondsmen Code and that its long time construction of section 1320(B)—a professional bondsman may appoint a surety bondsman who is not limited by the ten bond rule—is reasonable and entitled to deference. The principle relied upon by the Commissioner is that a long prevailing contemporaneous construction of an ambiguous statute by an agency charged with its execution is not controlling but is entitled to great weight unless the construction is erroneous and unreasonable. *Oral Roberts Univ. v. Okla. Tax Comm'n,* 1985 OK 97, ¶ 10, 714 P.2d 1013.

¶ 28 Under the Commissioner's construction of title 59, section 1320(B), a surety bondsman is restricted by a monetary limit of title 59, section 1306(A)(3), but not a numerical limit. The Commissioner reasons that the surety bondsman "writes" the bonds. If this were so, the surety bondsman also

"writes" the bonds for purposes of title 59, section 1306(A)(3), which provides that "a professional bondsman [shall not] *write* bonds which equal more than ten times the amount of the deposit which such bondsman has submitted to the Commissioner." (Emphasis added.) The Commissioner's position is internally inconsistent because, under her construction, a surety bondsman acting as an agent for a professional bondsman is not bound by section 1320(B)'s numerical limitation but is bound by section 1306(A)(3)'s monetary limitation when both statutes use "write bonds" as the operative language.[14] Further, the provisions relied on by the Commissioner to support her position that section 1320(B) is ambiguous actually support a finding that the Legislature understood and incorporated the common-law rules of agency into the Code. The Commissioner's construction of section 1320(B) is erroneous and unreasonable and is not entitled to any deference.

### III. CONCLUSION

¶ 29 We find that title 59, section 1320(B) of the Oklahoma Statutes limits a professional bondsman to writing no more than ten bonds a year in a county where the professional bondsman has not registered his license, except in those counties which have no registered bondsman. We further find that the professional bondsman cannot circumvent title 59, section 1320(B) by employing a surety bondsman because the authority of a surety bondsman acting pursuant to a power of attorney is coextensive with that of the professional bondsman executing the power of

attorney. Since 1984, the Legislature has curtailed a professional bondsman's authority to act as a surety in counties other than the county of his registration. In contrast to the Legislature's actions, the Commissioner's construction of title 59, section 1320(B) negates its legislative limitations and is erroneous in that it is inconsistent with section 1320's the legislative intent and legislative history. Based on our construction of title 59, section 1320, we need not address the plaintiff intervenors' other arguments.

¶ 30 The Court of Civil Appeals' opinion is vacated. The district court's judgment is reversed. The cause is remanded to the district court for further proceedings consistent with this opinion. *See* 75 O.S.2001, §§ 322–323.

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

EDMONDSON, C.J., TAYLOR, V.C.J., and KAUGER, WINCHESTER, and REIF, JJ., concur.

WATT and COLBERT, JJ., dissent.

HARGRAVE, J., disqualified.

---

**14.** Carrasco cites *Cox v. Dawson,* 1996 OK 11, 911 P.2d 272. Cox involved the appointment of Mining Commission members to staggered seven-year terms when title 45, section 1 of the 1995 Oklahoma Statutes authorizing appointments to the Mining Commission did not provide for staggered terms. The statute at issue in *Cox* was ambiguous, the Mining Commission had adopted a formal rule staggering the terms, and the Senate acquiesced in the staggered terms by confirming fourteen of the appointments. Here, the Department has not adopted a formal rule, and there is no indication that the Legislature was even aware of the Commissioner's construction. Carrasco incorrectly states that, in 2005, the Legislature voted against House Bill 2057 which

was an attempt to add subsection 1320(C) in title 59 which provided in part:

> [N]o more than ten (10) bonds per year may be written in any county outside the home county of the professional bondsman by either the professional bondsman, the appointed surety of the bondsman, or any combination of them, or all of them combined.

The Legislature did not vote against House Bill 2057. In fact, House Bill 2057 was not brought to the legislative body for a vote. *See* 1 *Journal of the House of Representatives of the First Regular Session of the Fiftieth Legislature* 278, 313 (2005).