OSCN Found Document:TOCH, LLC v. CITY OF TULSA

 

 
 

 
 TOCH, LLC v. CITY OF TULSA
2020 OK 81
Case Number: 118682
Decided: 09/29/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 81, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

TOCH, LLC, an Oklahoma Limited Liability Company Plaintiff/Appellee,
v.
CITY OF TULSA, an Incorporated Municipality, Defendant/Appellant,
and
TULSA HOTEL PARTNERS, LLC, an Oklahoma Limited Liability Company, Intervenor/Appellant.
ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
HONORABLE LINDA G. MORRISSEY, DISTRICT JUDGE
Â¶0 Plaintiff requested a declaratory judgment that Tulsa Tourism Improvement District No. 1 was improperly created. All parties sought summary judgment. The district court granted summary judgment in Plaintiff's favor. We retained Defendant's and Intervenor's appeal.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
John M. Thetford, Evan M. McLemore, and Grant B. Thetford, Levinson, Smith & Huffman, P.C., Tulsa, OK, for Plaintiff/Appellee, Toch, LLC. 
Gerald M. Bender, T. Michelle McGrew, and R. Lawson Vaughn, Tulsa, OK, for Defendant/Appellant, City of Tulsa.
Frederic Dorwart, Jared M. Burden, and J. Kyden Creekpaum, Frederic Dorwart, Lawyers PLLC, Tulsa, OK, for Intervenor/Appellant, Tulsa Hotel Partners, LLC.
OPINION
DARBY, V.C.J., 
Â¶1 The City of Tulsa (City), Defendant, passed an ordinance creating a tourism improvement district that encompassed all properties within City which had hotels or motels with 110 or more rooms available for occupancy. Toch, LLC, Plaintiff/Appellee, owns Aloft Downtown Tulsa (Aloft) with 180 rooms. Toch filed a petition in Tulsa County District Court requesting a declaratory judgment that the ordinance is invalid for a variety of reasons, including that the district does not include all hotels with at least 50 rooms available. The court granted summary judgment to Toch based on its determination that City exceeded the authority granted in title 11, section 39-103.1. The question before this Court is whether section 39-103.1 grants authority to municipalities to limit a tourism improvement district to a minimum room-count of a number larger than 50. We answer in the affirmative.
I. BACKGROUND
Â¶2 In October 2018, City proposed an ordinance to create Tulsa Tourism Improvement District No. 1 (TID). City limited the prospective district to "those properties within the geographical area of the City of Tulsa on which a hotel or motel, which in either case has one-hundred ten (110) or more rooms available for occupancy, is located." The proffered assessment-area map outlined the Tulsa corporate limits with bullet points noting the location of each hotel. The attached estimated-assessment roll listed thirty-three hotels and motels and contained hotel names, property owners, and legal descriptions for each property. Pet. Ex. A. The resolution stated that the "list of each Property on the assessment plat shall be updated as of each April 1 when the annual assessment roll is prepared." Id.
Â¶3 On November 5, 2018, Trevor Henson filed a letter with City which stated in relevant part:
I have been hired by multiple hotel owners to file an official objection to any creation of a Second Improvement District Assessment
[1] in Tulsa applying to hotels in excess of 110 Rooms within the City of Tulsa and in the proposed improvement district. The parties joining in this objection are the owners and operators of the hotels listed as follows:
. . .

Aloft Downtown Tulsa[ Footnote: Lee Levinson is the owner of the Aloft Downtown Tulsa hotel.]

Pet. Ex. B. On November 7, 2018, Henson filed a second opposition letter with City. Later that day at the City Council hearing, Henson, John Snyder, Lee Levinson, and three other individuals all made public comments in opposition to the creation of the TID. Joint Mot. for Summ. J. Ex. 3. Also at the hearing, Henson presented City Council with a copy of both previously filed objection letters before it voted unanimously in favor of the TID.
II. PROCEDURAL HISTORY
Â¶4 On December 6, 2018, Toch filed a petition in Tulsa County District Court requesting invalidation of the TID for a plethora of reasons, including that the creation and boundaries of the assessment roll were arbitrary, creation of the TID was outside of the authorities granted to City under title 11, section 14-101,
[2] and the size of the TID was arbitrary because it would not reasonably benefit its members but would benefit properties that were not included.[3] The petition stated that Toch's "primary business is owning and operating the Aloft Hotel located in Downtown Tulsa." Pet. 1. The petition noted that "[i]n order to simplify proceedings [Toch] is the only named Plaintiff and is acting as a representative on behalf of the parties that have collectively objected to the assessment and creation of the TID." Pet. 1 n. 1.
Â¶5 Over the next nine months, Toch filed a motion for summary judgment, Tulsa Hotel Partners (Intervenor) filed a motion to intervene, and City and Intervenor (together "Appellants") filed a joint-motion for summary judgment. Prior to the hearing on summary judgment, Toch argued that the TID violated both article V, section 59 of the Oklahoma Constitution as a special law, and the Equal Protection Clause of the United States Constitution, when it did not seek to also assess hotels with 50 through 109 rooms. Appellants argued that City was authorized to create the TID under title 11, sections 14-101 and 39-103.1 and the creation of the TID was a valid exercise of municipal power. In a footnote to their argument that the TID is not a special law, Appellants asserted that Toch's argument that the statute does not allow City to limit the TID "to hotels with 110 rooms or more is both immaterial to an analysis of special laws and incorrect" as the statute clearly permitted City "to choose the size of hotels it assesses, so long as the hotels have at least 50 rooms." Reply in Supp. of Joint Mot. for Summ. J. 3 n. 5, Oct. 2, 2019.
Â¶6 At the hearing on the motions for summary judgment, Toch argued that City did not have the authority to require 110 rooms, instead of 50, as a basis for inclusion in the TID and City had no legislative purpose to set the higher floor except attempting to garner enough support for passage. When questioned by the court about the statute potentially requiring inclusion of all hotels with 50 or more rooms, Appellants asserted that the legislature's use of the disjunctive or expressed a choice and the legislature would have written "at least 50" if it intended municipalities to include all hotels with 50 or more rooms. Appellants argued that the legislature intended to provide flexibility so municipalities could determine their own special needs and draw appropriate distinctions. Further, Appellants argued that if the statute was ambiguous, the city council "makes the call on how to apply it."
Â¶7 In February 2020, the district court granted in part and denied in part Toch's motion for summary judgment and denied Appellants' motion for summary judgment. The journal entry incorporated the court's twenty-one page order, wherein the court summarized Toch's arguments on summary judgment down to three points, but only granted the motion based on the first: "the TID was improperly created because the City did not use the 50 room threshold as authorized by 11 O.S. Â§ 39-103.1 but rather arbitrarily established a threshold of 110 rooms." Order 5, Jan. 15, 2020.
[4]
Â¶8 The district court determined that, "any citizen of Tulsa and certainly any hotel in the TID could at any time bring an action for determination of whether [City] has followed the law in creating the TID." Order 20--21. The court ultimately ruled:
The Legislature did not grant to [City] the authority to legislate the number of rooms a hotel must have in order to be subject to the TID
. The level set by the legislature, "50 or more rooms" is "perfectly clear" and unambiguous. . . . . A number of questions raised by [Toch] are not reached in the determination of this matter because the enabling statute simply does not grant authority to [City] to set a threshold for creation of a TID. The threshold created by the legislature is 50 or more rooms. 
Order 20--21 (emphasis added). In performing a partial analysis of the TID as a special law under article V, section 59 of the Oklahoma Constitution, the court noted, but failed to address, Appellants' argument that the language of title 11, section 39-103.1 permits City to choose the size of hotels it assesses. Order 18. Instead, the court continued on with its special law analysis of the TID and then granted summary judgment based on the undiscussed, yet dispositive, issue.
Â¶9 Appellants timely filed a petition in error and now argue in relevant part that the district court erred in granting summary judgment when it (1) held that any citizen of Tulsa and certainly any hotel in the TID could bring an action to challenge the City's proper creation of the TID at any time, and (2) found sua sponte that municipalities can create a TID under section 39-103.1 only if all hotels with at least 50 rooms are included.
[5] Appellants requested that we retain the appeal and grant leave to submit additional briefing because the district court ruled based on a theory they had not been allowed to dispute. We did both.
Â¶10 In their Brief in Chief, Appellants allege that title 11, section 39-103.1 sets a floor for the minimum size of hotels which may be included.
[6] Appellants claim that the district court ignored all but the words "50 or more" in order to find a statutory requirement for municipalities to include all hotels with at least 50 rooms. Appellants note that the plain meaning of the disjunctive or is an alternative between one or more choices; accordingly, Appellants argue that the statute grants municipalities discretion to tailor districts to their unique socio-economic circumstances so long as each hotel has a minimum of 50 rooms.
Â¶11 Appellants argue that within the context of the tourism statute, the language "50 or more" can only be interpreted as a floor because sections 39-103.1 and 39-104
[7] provide broad discretion to the municipality. Appellants contend that the district court's "rigidity flies in the face of the general purpose of the Act" and does not provide the flexibility needed for both large and small cities. Appellants submit arguendo that even if the Court finds the statute created a level,[8] the TID is still proper because, "[h]ere, the 'geographical area' of the [TID] is not synonymous with the city limits of Tulsa, but rather consists of the non-contiguous properties" described on the attached assessment role "with hotels that have 110 or more rooms." Appellants' Br. in Chief 11.
Â¶12 Appellants further argue that the district court erred in allowing Toch to challenge the TID. Appellants note that section 39-108(D) specifically mandates that challenges to creation of a tourism improvement district are only allowed if a person previously filed a written protest during the hearing. Appellants aver that the objection here was filed at the hearing in the name of the hotel, not the name of the property owner, therefore Toch cannot object before the district court.
Â¶13 In response, Toch claims that Appellants failed to apply the correct standard of review, Toch has standing, and the district court properly held that section 39-103.1 mandates that if the municipality wishes to enact an improvement district for marketing hotels it must contain all hotels with at least 50 rooms. Toch states that this Court must presume that the district court was correct and review the district court's order under a clearly erroneous standard. Toch asserts that the district court properly found it had standing based on the court's findings.
[9] Finally, Toch notes that the only issue decided below is whether City exceeded its authority under section 39-103.1 by choosing its own threshold for inclusion in the TID. Toch asserts that the legislature knows how to set a floor, and instead chose here to set a level--indicated by the legislature not using language identical to that of other statutory floors. Toch argues that the district court properly found section 39-103.1 mandates a "level of rooms (a) that must be included in any TID and (b) without which, the City may not create an Improvement District." Appellee's Resp. 10.
Â¶14 In reply, Appellants maintain that Toch considers key statutory language out of context and ignores the portion of the statute which allows municipalities unfettered discretion to define the geographical area of improvement districts. Appellants explain that "rather than mandating what properties must be included in such an improvement district, [the phrase '50 or more rooms'] sets a floor regarding what properties may be included in an improvement district." Reply 5 (emphasis original). Appellants further note that standing is a legal issue that appellate courts review de novo.
III. STANDARD OF REVIEW
Â¶15 Summary judgment settles only questions of law, therefore, we review de novo the grant thereof. Am. Biomedical Grp. v. Techtrol, Inc., 2016 OK 55, Â¶ 2, 374 P.3d 820, 822. "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Horton v. Hamilton, 2015 OK 6, Â¶ 8, 345 P.3d 357, 360; see also 12 O.S.2011, Â§ 2056(C). If a party is not entitled to judgment as a matter of law, then summary judgment will be reversed. Horton, 2015 OK 6, Â¶ 8, 345 P.3d at 360. Questions of statutory interpretation are reviewed de novo. Signature Leasing, LLC v. Buyer's Group, LLC, 2020 OK 50, Â¶ 2, 466 P.3d 544, 545.
IV. ANALYSIS
Â¶16 The issue before this Court is whether City exceeded its legislative authority in enacting the TID. Because the "mandatory scope of a legally cognizable cause of action may present a jurisdictional question," we must first address whether title 11, section 39-108(D) was complied with here. See Indep. Sch. Dist. No. 52 of Okla. Cty. v. Hofmeister, 2020 OK 56, Â¶ 53, --- P.3d ---.
A. Title 11, Section 39-108(D)
Â¶17 Section 39-108(D) mandates:
Within thirty (30) days after the governing body has concluded the hearing; determined the advisability of constructing the improvement and the type and character of the improvement; and created the improvement district, any person who, during the hearing, filed a written protest with the governing body protesting the construction of the improvement may commence an action in district court to correct or set aside the determination of the governing body. After the lapse of thirty (30) days succeeding the determination of the governing body, any action attacking the validity of the proceedings and the amount of benefit to be derived from the improvement is perpetually barred.
11 O.S.2011, Â§ 39-108(D)(emphasis added). This section creates a condition precedent in order to bring an action attacking the validity of a tourism improvement district: objecting to the creation of the district at the hearing creating it. The district court was therefore incorrect in its statement that "any citizen of Tulsa and certainly any hotel in the TID could at any time" challenge whether City "followed the law in creating the TID." Order 20--21 (emphasis added). But, in this case, Toch timely and properly brought the challenge on behalf of Aloft through an agency relationship.
Â¶18 "An agency relationship generally exists if two parties agree one is to act for the other." Sur. Bail Bondsmen of Okla., Inc. v. Ins. Comm'r, 2010 OK 73, Â¶ 23, 243 P.3d 1177, 1185 (quoting McGee v. Alexander, 2001 OK 78, Â¶ 29, 37 P.3d 800, 807). "[A] principal cannot do an act through an agent which the principal could not do directly." Sur. Bail Bondsmen of Okla., 2010 OK 73, Â¶ 24, 243 P.3d at 1185. Here, the petition stated that Toch brought the action on behalf of the parties that objected to the creation of the TID and noted that Toch owns and operates Aloft. Toch did not appear and object at the hearing, but at least one party appeared at the hearing and filed a written objection on behalf of Aloft. Because Toch filed the petition in this matter as owner, operator, and on behalf of Aloft, we find Toch met the statutory prerequisite and properly brought this action.
B. Title 11, Section 39-103.1
Â¶19 Municipalities possess and can exercise only those powers expressly or impliedly granted by the state. City of Hartshorne v. Marathon Oil Co., 1979 OK 48, Â¶ 4, 593 P.2d 97, 99; Ex parte Holmes, 1933 OK 62, Â¶ 11, 18 P.2d 1053, 1054; see In re De-Annexation of Certain Real Prop. from City of Seminole, 2004 OK 60, Â¶ 10, 102 P.3d 120, 125--26. A city has no power to enact an ordinance that includes persons or principles not clearly within the terms of the delegated powers. Ex parte Holmes, 1933 OK 62, Â¶ 11, 18 P.2d at 1054. "[W]hen any fairly reasonable doubt exists as to the grant of the power, such doubt is resolved by the courts against the corporation, and the existence of the power is denied." Id.
Â¶20 Under title 11, section 39-103.1, municipalities are authorized to create tourism improvement districts for the sole purpose of providing marketing services for private or public events reasonably calculated to increase occupancy and room rates for such properties as a class. 11 O.S. Supp. 2016, Â§ 39-103.1(A). If the municipality desires to create such a district, it "may be comprised of a designated geographical area within the municipality and limited to only those properties within such geographical area on which a hotel or motel having 50 or more rooms available for occupancy is located." Id. The district court granted summary judgment solely based on its determination that City exceeded its authority in the enabling statute when it created the TID with a threshold of 110 rooms instead of 50. Therefore the question before us is whether City exceeded the authority granted to it within section 39-103.1.
Â¶21 In 1978, the Oklahoma Legislature created the Oklahoma Improvement District Act (Act), 11 O.S.2011, Â§Â§ 39-101--39-121. The enabling statute here states in part:
In addition to those purposes set out in Section 39-103 of this title, the governing body of any municipality having a population of more than one thousand five hundred (1,500) may create one or more districts and levy assessments for the purpose of providing or causing to be provided any maintenance, cleaning, security, shuttle service, upkeep, marketing, management or other services which confer special benefits upon property within the district by preserving, enhancing or extending the value or usefulness of any improvement described in Section 39-103 of this title, whether or not the improvement was financed or constructed pursuant to this act and such governing body may exclude or modify such assessments according to benefits received on properties which are exempt from ad valorem taxation, except those assessments provided for by Section 39-103 of this title. Without limiting or expanding the preceding sentence or any other provision of this act, such a district may be comprised of a designated geographical area within the municipality and limited to only those properties within such geographical area on which a hotel or motel having 50 or more rooms available for occupancy is located, if the sole purpose of the district is to provide marketing services for private or public events reasonably calculated to increase occupancy and room rates for such properties as a class.
11 O.S. Supp. 2016, Â§ 39-103.1(A) (emphasis added). In 2016, the legislature amended section 39-103.1(A) to add the disputed sentence in this case, which is italicized above. Whether the words "50 or more" are meant as a level or floor is a question of statutory interpretation and as such our primary goal is to ascertain and follow the intent of the Oklahoma Legislature. See Signature Leasing, 2020 OK 50, Â¶ 18, 466 P.3d at 549.
Â¶22 "Such intent must be gleaned from the statute in view of its general purpose and object." Grimes v. City of Okla. City, 2002 OK 47, Â¶ 6, 49 P.3d 719, 723. In seeking intent, the court may look at each part of the statute, other statutes on the same subject, and the consequences of any particular interpretation. Okla. Ass'n of Broadcasters, Inc. v. City of Norman, 2016 OK 119, Â¶ 16, 390 P.3d 689, 694. We presume that the legislature "expressed its intent and that it intended what it expressed." Heath v. Guardian Interlock Network, Inc., 2016 OK 18, Â¶ 14, 369 P.3d 374, 379. In the absence of ambiguity or conflict with another enactment, we simply apply the statute according to the plain meaning. Video Gaming Techs., Inc. v. Tulsa Cty. Bd. of Tax Roll Corrs., 2019 OK 84, Â¶ 11, 455 P.3d 918, 921. Words will be given their ordinary meaning unless a contrary legislative intent plainly appears. 25 O.S.2011, Â§ 1; Video Gaming Techs., 2019 OK 84, Â¶ 11, 455 P.3d at 921.
Â¶23 We first ask whether the statute mandates particular language a municipality must use to describe a proposed district. It clearly does not. By use of the word may, the statutory language permits, or allows, districts comprised of areas within the municipality and further limited to only properties on which a hotel with 50 or more rooms is located.
Â¶24 Toch argues the disputed clause creates a level--meaning City is only allowed to create a district for marketing hotels if it includes all hotels with 50 or more rooms. But that interpretation is not consistent with the common meaning and usage of or. "If you are offered coffee or tea, you may pick either (or, in this case, neither), or you may for whatever reason order both. This is the ordinary sense of the word, understood by everyone and universally accommodated by the simple or." And/or, Garner's Modern American Usage 45(3d ed. 2009) (emphasis original).
Â¶25 On a deeper grammatical level, or is a "disjunctive particle used to express an alternative or give a choice of one among two or more things." Or, Black's Law Dictionary 987 (5th ed. 1979); State ex rel. Wise v. Whistler, 1977 OK 61, Â¶ 8, 562 P.2d 860, 862. We have stated numerous times that the Legislature's use of the word or shows intent to treat the terms on either side of it as separate and distinct, or give a choice among options.[10] The United States Supreme Court has noted that "[w]hile [or] can sometimes introduce an appositive--a word or phrase that is synonymous with what precedes it ('Vienna or Wien, 'Batman or the Caped Crusader')--its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" United States v. Woods, 571 U.S. 31, 45--46, 134 S. Ct. 557, 567, 187 L. Ed. 2d 472 (2013) (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)). Further, "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise." Reiter, 442 U.S. at 339, 99 S. Ct. at 2331.
Â¶26 Appellants argue that the context of the phrase "50 or more" within the tourism statute and Act clearly shows the legislature intended for municipalities to have flexibility in creating districts appropriate to their own needs and is a floor for which hotels may be included, not a level or threshold. We agree. The disputed provision preemptively explains that it is not meant to limit or expand any of the other provisions in the statute or Act. 11 O.S. Supp. 2016, Â§ 39-103.1(A). Section 39-103.1 and section 39-104 both provide flexibility to municipalities in creating improvement districts that are customized to their needs and clearly allow municipalities to create improvement districts solely by geographic description.
Â¶27 While Toch argues that the legislature knows how to create a floor using the words, "more than," the legislature is not restricted to only one method of sentence construction to create a floor. Further, a one-size-fits-all hotel improvement district would not make sense for both large municipalities, like Tulsa or Oklahoma City, and smaller municipalities across the state. Municipalities have different needs, and assessments must be tailored to specifically help the people assessed. See City of Lawton v. Akers, 1958 OK 292, Â¶Â¶ 18-23, 333 P.2d 520, 525--26.
Â¶28 The legislature's use of the word limited also indicates this provision's permissive nature, which is consistent with the tenor of the entire act. Black's Law Dictionary defines limited: "Restricted; bounded; prescribed. Confined within positive bounds; restricted in duration, extent, or scope." Limited, Black's Law Dictionary 836 (5th ed. 1979). The limitation in section 39-103.1(A) provides a range, or scope, of hotels eligible for inclusion in a hotel improvement district.
Â¶29 The district court improperly strained its interpretation of the language describing which hotels may be included to instead describe which hotels must be included. Had this been the legislature's intent, instead of "limited to only," the wording would be, "and include all" properties within the areas on which a hotel with 50 or more rooms is located. Courts should not interpret statutes to mean something the legislature did not intend or express, especially where the resulting interpretation is absurd in light of the Act as a whole. See Ledbetter v. Okla. Alcoholic Beverage Laws Enf't Comm'n, 1988 OK 117, Â¶ 7, 764 P.2d 172, 179 ("Statutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits.").
Â¶30 The legislature intended to ensure that districts formed under section 39-103(A) do not create assessments for smaller hotels unlikely to benefit from the stated sole purpose of the district, which is to provide marketing services for events calculated to increase occupancy and room rates for such hotel properties as a class. Municipalities require flexibility regarding the number of hotel rooms included in improvement districts in order to reasonably ensure that the assessment is only enacted against the hotels or properties benefitting from it. The statute thus protects hotels with less than 50 rooms, but does not force municipalities to include all hotels with more than 50 rooms.
Â¶31 Nothing in the statute prevents a municipality from proposing a district limited to only properties on which hotels with 50 or more or even 500 or more rooms are located. The TID falls within the permitted description because the designated areas are within the municipality and are limited to only properties therein on which hotels having 50 or more rooms are located. City did not exceed the authority granted in title 11, section 39-103.1 by limiting the TID to hotels with 110 or more rooms.
V. CONCLUSION
Â¶32 Title 11, section 39-103.1(A) provides municipalities the authority and discretion to create hotel advertising tourism improvement districts for any size hotel the municipality deems appropriate, so long as they have at least 50 rooms. City did not exceed the authority granted to it when it chose to limit the TID to hotels with 110 or more rooms. The district court erred in granting summary judgment to Toch. The district court's order is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
Darby, V.C.J., Winchester, Edmondson, Colbert, and Combs, JJ., concur;
Gurich, C.J., Kauger, Kane, and Rowe (by separate writing), JJ., dissent.

Kane, J., dissenting:
I believe the trial court construed the statute correctly.

FOOTNOTES
[1] While Plaintiff refers to the proposed TID as the "Second Improvement District Assessment" in this letter, the objection was filed in reference to the Tulsa Tourism Improvement District No.1, formed under title 11, section 39-103.1.
[2] The municipal governing body may enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions. Municipal ordinances, rules or regulations may be repealed, altered or amended as the governing body ordains.
11 O.S.2011, Â§14-101
[3] The full list of arguments for invalidation of the TID in the petition:
[1]. The assessment [was] not reasonably tethered to a direct benefit to be equitably distributed to all of the parties to be assessed in violation of 11 O.S. Â§Â§ 39-103, 39-104, 39-110. 
[2]. The creation of the assessment roll [was] arbitrary in violation of 11 O.S. Â§Â§ 39-103, 39-104, 39-110. 
[3]. The boundaries of the assessment area [were] arbitrary in violation of 11 O.S. Â§Â§ 39-103, 39-104, 39-110. 
[4]. The assessment [was] improper because the benefit to each party [was] not equal to the amount of the assessment in violation of 11 O.S. Â§Â§ 39-103, 39-104, 39-110. 
[5]. The assessment [was] unconstitutional on its face because the statute upon which it [was] based [was] unconstitutional because it violate[d] of [sic] Article 2 Section 7 of the Oklahoma Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. 
[6]. The statutes allowing for the creation of the TID violate[d] Article 2 Sec[tion] 7 of the Oklahoma Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. 
[7]. The assessment is [sic] violate[d] the Fourteenth Amendment of the United States Constitution because [it] seeks only to assess the 3% tax liability on hotels with 110 rooms or more. 
[8]. The amount of assessment [was] inequitably apportioned because certain parties within the assessment district stand to receive a greater benefit than other parties within the same assessment district. The parties subject to the assessment do not stand to collectively benefit as a class in direct violation of 11 O.S. Â§ 39-103.1. 
[9]. The creation of the TID [was] outside of the authorities granted to municipalities under 11 O.S. Â§ 14-101. 
[10]. Creation of this Assessment confer[red] no special benefit upon the properties within the TID in direct violation of 11 O.S. Â§Â§ 39-103, 39-104, 39-110. 
[11]. The basis for the creation of this assessment [was] unclear and therefore [was] improper of [sic] 11 O.S. Â§ 39-111. 
[12]. The creation of this assessment district [was] in no way necessary to preserve peace or health and safety of the public and therefore [was] improper as an emergency ordinance. The creation of the assessment district under an emergency basis is [sic] violate[d] of [sic] 11 O.S. Â§ 39-107. 
[13]. The assessment itself [was] arbitrary because it [was] impossible to determine the specific benefits that benefit each member of the assessment district. 11 O.S. Â§ 39-107. 
[14]. The size of the assessment district [was] arbitrary because it create[d] an improvement district that will not reasonably benefit its members but will likely benefit properties that are not a part of the district. 11 O.S. Â§ 39-111. 
[15]. There ha[d] been no proper notice nor a proper hearing for the creation of an improvement district pursuant to 11 O.S. Â§ 39-107. 
[16]. There ha[d] been no specific description of what improvement will occur nor a hearing thereof, to discuss the benefits conferred to the parties as required by 11 O.S. Â§ 39-107. 
[17]. There ha[d] been no description of the benefit to be conferred by the assessment to the specific parties in violation of 11 O.S. Â§ 39-107. 
[18]. The method of management of the monies is improper and in direct violation of 11 O.S. Â§ 39-113. 
[19]. Any monies derived through the creation of the TID cannot be conveyed to VisitTulsa to be managed. 
[20]. The creation of the TID ha[d] been objected to in writing by over 50% of the hotels subject to the assessment and the creation of the TID [was] improper pursuant to 11 O.S. Â§ 39-108(D). . . . 
[21]. Pursuant to 11 O.S. Â§ 39-108(D) it was improper for the City Council to proceed to a vote on the creation of the TID.
Pet. 3--6.
[4] The other two arguments on summary judgment were that "more than 50% of the parties subject to the TID objected pursuant to 11 O.S. Â§ 39-108(D)," and the TID and statute are unconstitutional. Order 5.
[5] Appellants also dispute that the district court erred when it (1) held the TID was a special law under article V, section 46, (2) performed a partial special law analysis of the enacting statute, and (3) found the 110-room threshold was arbitrary. We find that the limited grant of summary judgment against City was not based on any of the above arguments. Further, to any extent they were addressed by the district court, Toch has abandoned such arguments on appeal. See Fent v. Contingency Review Bd., 2007 OK 27, Â¶ 22 n. 58, 163 P.3d 512, 525 n. 58 ("Claims to error for which there is no support in argument and authority are deemed abandoned.").
[6] "The lower limit; e.g. minimum wages; lowest price stock will be permitted to fall before selling." Floor, Black's Law Dictionary 577 (5th ed. 1979).
[7] Any district may include one or more streets or areas which need not be contiguous and may include two (2) or more types of improvements. Such improvements may be included in one (1) proceeding and constructed and financed as one improvement. The district shall include, for the purpose of assessment, all the property which the governing body determines is benefited by the improvement or improvements . . . .
11 O.S.2011, Â§ 39-104.
[8] The district court and the parties use the terms level and threshold synonymously to refer to a value above which inclusion is mandatory.
[9] Toch proposes that Appellants' focus on title 11, section 39-108(D)'s requirements would allow unconstitutional laws to exist unfettered if not protested within thirty days. Toch also alleges that section 39-108(D) raises substantial due process concerns regarding who may object to the TID creation and who is affected by it. The constitutionality of title 11, section 39-108(D) was not questioned in any way below, therefore we do not address it now. See Lee v. Bruno, 2016 OK 97, Â¶37 n. 7, 381 P.3d 736, 749 n.7; see also Stonecipher v. Dist. Ct. of Pittsburg Cty., 1998 OK 122, Â¶ 11, 970 P.2d 182, 186.
[10] See Cline v. Okla. Coal. for Reprod. Just., 2013 OK 93, Â¶ 15, 313 P.3d 253, 259; see also In re J.L.M., 2005 OK 15, Â¶ 7, 109 P.3d 336, 339; see also State ex rel. Dep't of Pub. Safety v. 1985 GMC Pickup, 1995 OK 75, 898 P.2d 1280, 1285; see also Corp. Comm'n v. Union Oil Co., 1979 OK 30, Â¶ 8, 591 P.2d 711, 715; see also Whistler, 1977 OK 61, Â¶ 8, 562 P.2d at 862.

Rowe, J., dissenting, with whom Gurich, C.J. and Kauger, J., join:
Â¶1 The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, which is first sought in the language of a statute. Fanning v. Brown, 2004 OK 7, Â¶ 10, 85 P.3d 841. When the language is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed. City of Durant v. Cicio, 2002 OK 52, Â¶ 13, 50 P.3d 218. In the interpretation of statutes, we do not limit our consideration to a single word or phrase. Instead, we construe together the various provisions of relevant enactments, in light of their underlying general purpose and objective, to ascertain legislative intent. World Publishing Co. v. Miller, 2001 OK 49, Â¶ 7, 32 P.3d 829, 832; McNeill v. City of Tulsa, 1998 OK 2, Â¶ 11, 953 P.2d 329.
Â¶2 The majority's interpretation of 11 O.S. Supp. 2016 Â§ 39-103.1 erroneously focuses solely on the phrase "50 or more," without giving proper consideration to the qualifying language in the remainder of the sentence:
Without limiting or expanding the preceding sentence or any other provision of this act, such a district may be comprised of a designated geographical area within the municipality and limited to only those properties within such geographical area on which a hotel or motel having 50 or more rooms available for occupancy is located, if the sole purpose of the district is to provide marketing services for private or public events reasonably calculated to increase occupancy and room rates for such properties as a class. (Emphasis added.)
Â¶3 The phrase "for such properties as a class" clearly expresses the Legislature's intent that "50 rooms or more" was meant to be something other than a floor; it was meant to be the level from which all improvements districts must be created. Additional rules of construction employed by the majority are unnecessary. The statute as a whole clearly and unambiguously defines the class of properties for an improvement district that a municipality having a population of more than 1,500 may create if the sole purpose of the district is to provide marketing services to benefit the entire class.[1]
Â¶4 The Legislature has designated one class for the subject improvement district which as an entire class may be burdened with the special assessment (i.e., properties on which a hotel or motel having 50 or more rooms available for occupancy is located).
Â¶5 City of Tulsa arbitrarily created a special class of hotels or motels--those with greater than 110 rooms--which are subject to an assessment of 3% of the gross proceeds per room. This special class was arbitrarily chosen because City of Tulsa could not get a majority vote for the subject improvement district for hotels or motels with 50 or more, 75 or more, or 100 or more rooms.
[2] City of Tulsa exceeded its legislative authority when it impermissibly modified the statute to create a subclass for the improvement district other than that designated by the statute.
Â¶6 Additionally, Okla. Const. art. 5, Â§ 46 prohibits the Legislature from passing special laws on certain subjects, including, as relevant here, "[r]egulating the affairs of counties, cities, town, wards, or school districts." Special laws are those which single out less than an entire class of similarly affected persons or things for different treatment. EOG Resources Marketing v. Oklahoma State Board of Equalization, 2008 OK 95, Â¶ 20, 196 P.3d 511.
Â¶7 I agree with the trial court that Â§ 39-103.1 is altogether an impermissible special law violative of Okla. Const. Art. 5, Â§Â§ 46 and 59. "A classification is not a prohibited, special law if it establishes a reasonable classification of persons, entities or things, sharing the same circumstances." City of Bethany v. Public Employees Relations Bd., 1995 OK 99, Â¶ 36, 904 P.2d 604; State v. Goforth, 1989 OK 37, Â¶ 10, 772 P.2d 911. As written, the statute is permissive in character. However, similarly situated hotels and motels with less than 50 rooms within the improvement district will receive the benefits of the assessed class of hotels or motels, yet pay no assessment.
Â¶8 Accordingly, I respectfully dissent.
FOOTNOTES
[1] City of Tulsa admits that the Tourism District challenged here is "[to] provid[e] marketing services reasonably calculated to increase occupancy and room rates for these hotels and motels." See Brief in Chief, p. 3.
[2] Transcript of Proceedings, April 25, 2019, p. 16, ln. 2-10.