OSCN Found Document:IN THE MATTER OF THE ESTATE OF LANDING

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF THE ESTATE OF LANDING
2023 OK 117
Case Number: 120759
Decided: 12/12/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 117, __ P.3d. __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

In the Matter of the Estate of GEORGE VERNON LANDING, JR., Deceased. EMMA G. LANDING, Appellant,
v.
JIM C. McGOUGH, Personal Representative of the Estate of George Vernon Landing, Jr., Appellee.

ON APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, STATE OF OKLAHOMA;

HONORABLE KELLY GREENOUGH, DISTRICT JUDGE

¶0 Appellant sought to remove the current administrator of her father's estate, claiming that under 58 O.S. § 135, she has superior right to the role and the court had no discretion to refuse her request. The District Court of Tulsa County, the Honorable Kelly Greenough, disagreed and denied Appellant's request. We hold that the trial court had discretion in the matter and did not abuse that discretion when it denied Appellant's motion.

ORDER OF THE DISTRICT COURT AFFIRMED

Emily S. Eleftherakis, Oklahoma City, OK for Appellant.

Catherine Welsh & Daphne A. Burns, Tulsa, OK for Appellee.

KUEHN, J.

¶1 George Landing, Jr. was tragically killed when his truck was hit by a motorist driving the wrong direction on the Turner Turnpike. Landing was divorced. He left behind two minor daughters. He left no will. One of the daughters, Emma, is the Appellant here. Among Landing's assets is the potential for his estate to recover in a wrongful-death action. This case involves a third-party administrator and personal representative for Landing's estate, the possibility of monetary recovery from the accident, and a succession of lawyers interested in participating in the wrongful-death suit. The issue presented is whether the trial court has discretion to deny removal of a third-party administrator when requested to do so by one of the family members listed in 58 O.S. § 135.

¶2 Landing died in July 2015. In August his ex-wife, Dana Landing (now Beagles), acting as their daughters' guardian, petitioned to be administrator of Landing's estate. The request was granted. In December 2015 Beagles, acting as personal representative of the estate, filed a wrongful-death action in Tulsa County. That action remains pending.[1] A local attorney with experience in probate matters, Appellee Jim McGough, was appointed general guardian to Landing's daughters. In early 2018, Beagles voluntarily resigned as administrator of the estate and named McGough to take her place. McGough was also substituted as the estate's personal representative in the wrongful-death suit.

¶3 An estate's representative chooses the attorneys who will prosecute civil suits on the estate's behalf. See generally 58 O.S. § 11. Since McGough's appointment, there have been many attempts to remove him from both of his roles. These attempts stem from Beagles's discussions with various lawyers interested in participating in the wrongful-death suit. Because McGough apparently did not agree to substitute the lawyers Beagles wanted for the lawyers he had already retained, in May 2020 Beagles tried to have him removed as administrator. The trial court concluded Beagles lacked standing to make such a challenge.

¶4 Just days after her eighteenth birthday in March 2021, Emma Landing made her own request to remove McGough and assume the roles of administrator and personal representative. That request was denied after a hearing. A second request, in July 2021, was later stricken by agreement. In June 2022, Emma filed the instant request to replace McGough. At a hearing in August 2022, the trial court granted an unopposed motion to end McGough's guardianship over both Emma and her younger sister, but it denied Emma's request to take McGough's place as administrator. Emma appealed, and we retained the case for decision.

STANDARD OF REVIEW

¶5 Probate proceedings are of equitable cognizance. We presume that the trial court's decision is correct and will not disturb it unless it is clearly contrary to the weight of the evidence. In re Estate of Fulks, 2020 OK 94, ¶ 9, 477 P.3d 1143. This case also involves questions of statutory interpretation; those questions are reviewed de novo. Id. De novo review affords this Court plenary, independent, and non-deferential authority to interpret the law. Schlumberger Technology Corp. v. Paredes, 2023 OK 42, ¶ 3, 528 P.3d 772.

ANALYSIS

A. Whether the appeal is foreclosed as res judicata.

¶6 In his response to Emma's Petition in Error, McGough claims Emma is barred from appealing the trial court's August 2022 ruling because she could have appealed the court's March 2021 denial of the same request but failed to do so. We disagree.

¶7 Emma's present attempt to remove McGough is based on the same grounds as her first attempt in March 2021. The question presented is one of law. Focusing on the language of 58 O.S. § 135, Emma claims that as Landing's adult daughter, her right to the role of administrator is superior to McGough's, and the court was required to grant her request.

¶8 The doctrine of claim preclusion, or res judicata, holds that parties (or their privies) may not relitigate issues once a final judgment on the merits has been rendered. In the Matter of the Estate of Sneed, 1998 OK 8, ¶ 13, 953 P.2d 1111. Failure to seek review of a trial court's adverse ruling on a particular claim, after final disposition on the merits, usually precludes any future attempt to have the claim reviewed. But the legislature has determined that certain interlocutory orders (those rendered before final judgment) are appealable by right, and many probate orders, including the instant one, fall in this category. 58 O.S. § 721(1) (appeal may be taken from any grant, refusal to grant, or revocation of letters of administration); Sup.Ct. Rule 1.60(h). While these rulings may be appealed before final judgment, failure to take an interlocutory appeal does not bar the aggrieved party from raising the claim at a later date. Sup.Ct. Rule 1.40(f). Res judicata will not bar review of probate orders that could have been challenged previously but were not. Sneed, 1998 OK 8, ¶ 13 & n.15. See also In re Estate of Caldwell, 1984 OK 92, ¶ 6 n.8, 692 P.2d 1380 (untimely attempt to appeal interlocutory probate order would not prevent litigant from re-asserting the claim later).

¶9 Furthermore, the essence of Emma's claim is that she should have the right, as the estate's personal representative, to guide the wrongful-death lawsuit -- a suit that could produce the largest asset of the estate. Such a right, if it exists, is meaningless if not conferred while that lawsuit is ongoing. See 58 O.S. § 721(10) (interlocutory appeal may be taken from any order in probate that "affect[s] a substantial right"); see also In re Guardianship of Berry, 2014 OK 56, ¶¶ 36-39, 335 P.3d 779 (interlocutory order on choice-of-counsel in guardianship matter was appealable before final judgment under 58 O.S. § 721(10)). We conclude that Emma's timely appeal from the August 2022 ruling is not barred by res judicata.

B. Whether the trial court erred in denying Emma's request to take McGough's place as administrator.

¶10 Emma claims she has superior right to the role of administrator vis a vis McGough and therefore enjoys the absolute right to take his place. She claims it is not her burden to show, as a preliminary matter, that she is competent to replace him, but rather that it was McGough's burden to show that she is not competent to serve, and that he failed to meet that burden.

¶11 Since Landing was unmarried at the time of his death, his daughters were next on the preferred list of potential administrators. 58 O.S. § 122(2). At the time, however, both girls were minors and thus ineligible to serve. 58 O.S. § 126(1). The girls' mother, Beagles, acting as their guardian, stepped into their shoes to take preferred position as administrator. 58 O.S. § 125; Sparks v. Steele, 1972 OK 127, ¶ 13, 501 P.2d 1106. Later, Beagles voluntarily stepped down as administrator and nominated McGough to take her place. 58 O.S. § 134; Hesler v. Snyder, 1967 OK 4, ¶ 21, 422 P.2d 432.

¶12 Emma doesn't challenge her mother's ability to nominate a third party, or McGough's qualifications to accept it. Nor does she claim that McGough has done (or failed to do) anything since his appointment that would warrant removal. She simply claims that she has the absolute right to rescind that appointment under the applicable law. We disagree.

¶13 Our probate code sets out rules for the appointment, challenge, and removal of personal administrators. For the initial appointment, the law provides a list of those who must be given the opportunity to serve, in order of preference, as well as a list of those who may not serve. Those who may not serve include minors; those convicted of an "infamous crime"; those deemed "incompetent," which we discuss shortly; and anyone who was in a partnership with the deceased. 58 O.S. §§ 126, 122(8). These impediments aside, the ordinal list of potential candidates begins with a surviving spouse and continues to others in the following order: children, parents, siblings, grandchildren, other next of kin, creditors and, finally, "[a]ny person legally competent." 58 O.S. § 122.

¶14 The trial court has no discretion to ignore this ordered list of preferred candidates. In re Enochs' Estates, 1958 OK 40, ¶ 7, 322 P.2d 197. But it does have discretion at many points in the process, including many potential scenarios of initial appointment. Note that every class of candidates except surviving spouse could include more than one person: the deceased's "children," his "father or mother," or his "brothers or sisters," and so on. 58 O.S. § 122. When priority is shared by a class containing more than one person, the court may, in its discretion, grant letters to "one or more of them." 58 O.S. § 124. Also, if the person entitled to priority is a minor, the court may, in its discretion, appoint the child's guardian "or any other [competent] person" as administrator. 58 O.S. § 125; Copperfield's Estate, 1932 OK 471, ¶ 10, 12 P.2d 490.

¶15 Even when priority of appointment falls to a single person in the list, such as the surviving spouse or an only child, the court must still use discretion to determine if that person is competent to serve. The term "competent" has a particular meaning in probate matters. It is defined in 58 O.S. § 126, which lists those who may not serve as administrator. The court cannot appoint someone who is "incompetent to execute the duties of the trust by reason of drunkenness, improvidence or want of understanding or integrity." Id. "Improvidence" also has a special meaning in these matters:

["Improvidence" means] that want of care and foresight in the management of property which would be likely to render the estate and effects of the intestate unsafe and liable to be lost or diminished in value, in case the administration should be committed to the improvident person.

Wyche v. Wyche, 1961 OK 211, ¶ 16, 365 P.2d 993 (citation omitted).[2]

¶16 When a petition for letters of administration is filed, interested parties have thirty days to contest it. 58 O.S. §§ 127-29. At the hearing, letters must be granted to any applicant "though it appears that there are other persons having better rights to the administration when such persons fail to appear and claim [the right for] themselves." 58 O.S. § 132.

¶17 One entitled to serve under Section 122 may nominate any other competent person to serve in her place. See 58 O.S. § 122(1) (surviving spouse may nominate another person to serve); 58 O.S. § 134 (any person entitled to serve may nominate another). Waiver of the right to serve is unconditional and cannot be reversed. Enochs' Estates, 1958 OK 40 at ¶ 15 ("the person qualified must either accept the appointment for himself or waive the right absolutely"). Nomination of another has the same effect. See In re Bedell's Estate, 32 P. 323 (Cal. 1893) (having once nominated an administrator, an heir cannot change his mind and seek letters himself or nominate another). Beagles, who first served as administrator because she was guardian to Landing's daughters, eventually nominated McGough to take her place. And that power to nominate is at issue in this case.

¶18 Emma's argument is based on her reading of 58 O.S. § 135, which immediately follows the section allowing any person with the right to serve to nominate any other competent person to do so. Section 135 provides:

When letters of administration have been granted to any person other than the surviving husband or wife, child, father, mother, brother, or sister of the intestate, any one of them may obtain the revocation of the letters and be entitled to the administration, by presenting to the county court a petition praying the revocation, and that letters of administration be issued to him.[3]

58 O.S. § 135. If, at a hearing on the matter, "the right of the applicant is established and he is competent, letters of administration must be granted to him, and the letters of the former administrator revoked." 58 O.S. § 137.

¶19 Emma reads Sections 135 and 137 to mean that any listed family member may, at any time, demand the removal of any administrator who is not on that list, regardless of whether the initial appointment was valid, and without any burden to show incompetency or malfeasance on the part of the incumbent. We believe this interpretation is flawed. It is clearly at odds with Section 134: A preferred person's right to nominate any competent person to serve in their stead.

¶20 The goal of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language. Odom v. Penske Truck Leasing Co., 2018 OK 23, ¶ 17, 415 P.3d 521. Statutes dealing with the same subject are generally viewed as in pari materia, and must be construed as a "harmonious whole." Taylor v. State Farm Fire & Cas. Co., 1999 OK 44, ¶ 19, 981 P.2d 1253. Courts should not interpret laws to mean something the legislature did not intend or express, especially where that interpretation leads to absurd results. Toch, LLC v. City of Tulsa, 2020 OK 81, ¶ 29, 474 P.3d 859.

¶21 The trial court's overarching duty in probate matters is to ensure the protection of the estate and its orderly administration and distribution. To that end, the court has a continuing duty to monitor the fitness of an administrator, and take remedial action on its own motion if necessary. 58 O.S. §§ 234, 235. For his part, the administrator has a fiduciary duty not only to heirs, but to other beneficiaries of the estate as well. As a fiduciary and officer of the court, the administrator must represent all beneficiaries equally, without favor to one over the other. 1 Okla.Prob.Law & Practice § 14.67. Sometimes, the estate's beneficiaries include parties beyond the decedent's heirs. That is the case here. The most valuable asset in Landing's estate is the potential for recovery in the lawsuit over his death. While Landing's daughters are his only heirs at law, Landing's parents have an interest in the lawsuit, as they are entitled to receive a portion of any damages that may be realized. 12 O.S. § 1053.

¶22 Did our legislature intend to give certain family members the right to intervene and remove a duly appointed administrator, at any time and without cause? We think not. The fallacy in Emma's argument is demonstrated by a simple example. We know Emma's mother, Beagles, acting as the girls' guardian, initially served as administrator and later nominated McGough. We also know that Beagles was behind the first attempt to remove McGough. But suppose that Beagles had still been married to Landing at the time of his demise, that she took the role of administrator as surviving spouse, that she nominated McGough to take her place, and that she is currently content with that situation. Under Emma's theory, even a surviving spouse's choice to nominate another could be reversed at any time by any family member listed in Section 135.

¶23 What is the point of having the right to nominate another, if that choice can be nullified at whim by select members of the family? Emma doesn't claim a special exception should lie for the particular facts in this case. She claims any family member listed in Section 135 has the right, at any time, to remove any administrator who is inferior in priority to the challenger under Section 122. Such a reading would render the right to nominate effectively useless. It could force one with priority, who no longer wishes to serve, to retain the title if only to prevent another family member with inferior right from usurping the role. The legislature cannot have intended such an absurd result.[4]

¶24 Emma's interpretation presents other related problems. Section 135 permits "any one of" the listed family members to make a challenge. There is no order of priority. Hence, a listed family member might challenge the acting administrator regardless of where the challenger stands in relation to other family members -- even those in Section 135 itself. With no order of priority, the result might be a melee of challenges and counter-challenges by family members listed in Section 135, pitting those who are happy with the current administrator against those who are not, those who would prefer that this relative serve instead of that one, etc. We believe Sections 135 to 138 simply ensure that certain family members, who may have been entitled to initial appointment under Section 122 but didn't receive timely notice and opportunity to contest that appointment within thirty days, have a chance to do so.[5] That request is still subject to trial court discretion. Cf. Smith v. Gould, 1967 OK 207, ¶¶ 16-17, 434 P.2d 176. But that is not the situation here. The trial court's initial appointment of Beagles adhered to Sections 122 and 125, and Emma does not claim otherwise.

¶25 Emma's interpretation divests one entitled to serve as administrator of the right, clearly expressed in both Sections 122(1) and 134, to nominate another to serve in her place. It frustrates the orderly and efficient settlement of estates by leaving nominees perpetually vulnerable to removal, regardless of whether the nomination was valid at the time it was made, and regardless of how long and effectively the incumbent may have served. It would lead to uncertainty and confusion in an area of law already prone to family drama.

¶26 Importantly, Emma does not claim any malfeasance, neglect, or other problem with McGough's performance, or the performance of the attorneys currently handling the wrongful-death suit. The issue boils down to lawyer preference. Both Emma and McGough testified at the hearing. In denying Emma's request, the trial court noted her age and general inexperience in the kinds of decisions she would be required to make as administrator and personal representative. As we have noted, "competency" has a specific meaning in probate matters. The trial court did not find that Emma's request should be denied because she was incompetent to serve. Rather, the court found -- as we do -- that, as a matter of law, it had discretion whether to remove McGough in the first place, and it considered the testimony of both before concluding that there was no good reason to do so. We cannot say the trial court abused its discretion.

ORDER OF THE DISTRICT COURT IS AFFIRMED

ALL JUSTICES CONCUR.

FOOTNOTES

[1] McGough v. Inventiv Commercial Services LLC et al., Tulsa County Case No. CJ-2015-4675.

[2] This special connotation of "competent" and "incompetent" is common in probate matters. See generally 113 A.L.R. 780 (Introduction).

[3] Similarly, Section 138 provides in part:

The surviving husband or wife, when letters of administration have been granted to a child, father, mother, brother or sister of the intestate, or any of such relatives when letters have been granted to any other of them, may assert his prior right, and obtain letters of administration, and have the letters before granted revoked... .

[4] The California Supreme Court expressed the same sentiment in In re Bedell's Estate, 32 P. 323, where it addressed a similar claim affecting the right to nominate:

This construction would, however, deprive the provisions of section 1379, Id., of the effect to which its language is entitled. That section provides that 'administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request of the person entitled, filed in the court.' If the relative right of appointment is to be determined by the order in which the parties entitled are enumerated in section 1365, and the nominee of any of the classes therein named, other than that of the husband or wife, is not to be regarded by the court, this provision of section 1379 would lose all effect. The fact that the person entitled is permitted to make a request that administration be granted to a person 'not otherwise entitled' must receive some consideration in the construction of the statute, for it is not to be supposed that the legislature has given such permission merely to have the request denied. The evident purpose of the provision is to give to the one entitled to administration the power to select some competent person to discharge the duties of the office; but to hold that his request is not to be considered when resisted by one who belongs to a class subsequent in rank to his own would be to confine his selection to some person falling within the class immediately after his own.

Id. at 341 (emphasis added).

[5] See King v. Salyer, 1935 OK 395, 44 P.2d 11 (deceased's brother waived his right to appointment in favor of sister; sister sought appointment as administrator, claiming their father, who had prior right, was deceased; deceased's father later appeared and moved to exercise his prior right to appointment, claiming the suggestion of his demise was fraudulently made).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1998 OK 8, 953 P.2d 1111, 69 OBJ 482, 
IN THE MATTER OF THE ESTATE OF SNEED
Discussed at Length

 
1935 OK 395, 44 P.2d 11, 172 Okla. 130, 
KING v. SALYER Adm'x.
Discussed

 
1958 OK 40, 322 P.2d 197, 
IN RE ENOCHS' ESTATES
Discussed at Length

 
1961 OK 211, 365 P.2d 993, 
WYCHE v. WYCHE
Discussed

 
1932 OK 471, 12 P.2d 490, 158 Okla. 40, 
In re COPPERFIELD'S ESTATE. COPPERFIELD et al. v. SHEDD Gd'n et al
Discussed

 
1967 OK 4, 422 P.2d 432, 
HESLER v. SNYDER
Discussed

 
1967 OK 207, 434 P.2d 176, 
SMITH v. GOULD
Discussed

 
1972 OK 127, 501 P.2d 1106, 
SPARKS v. STEELE
Discussed

 
2014 OK 56, 335 P.3d 779, 
IN THE MATTER OF THE GUARDIANSHIP OF BERRY
Discussed

 
2018 OK 23, 415 P.3d 521, 
ODOM v. PENSKE TRUCK LEASING CO.
Discussed

 
2020 OK 81, 474 P.3d 859, 
TOCH, LLC v. CITY OF TULSA
Discussed

 
2020 OK 94, 477 P.3d 1143, 
IN THE MATTER OF THE ESTATE OF FULKS
Discussed

 
2023 OK 42, 528 P.3d 772, 
SCHLUMBERGER TECHNOLOGY CORP. v. PAREDES
Discussed

 
1999 OK 44, 981 P.2d 1253, 70 OBJ 1664, 
Taylor v. State Farm Fire and Casualty Co.
Discussed

 
1984 OK 92, 692 P.2d 1380, 
Estate of Caldwell, In re
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1053, 
Wrongful Death - Limitation of Actions - Damages - Death of an Unborn Person
Cited

Title 58. Probate Procedure

 
Cite
Name
Level

 
58 O.S. 11, 
Definition of Personal Representative
Cited

 
58 O.S. 122, 
Persons Entitled to Letters of Administration
Discussed at Length

 
58 O.S. 124, 
When Several Persons are Equally Entitled to Administration
Cited

 
58 O.S. 125, 
Minor Entitled to Administration - Letters to Guardian
Discussed

 
58 O.S. 126, 
Incompetent Administrators
Discussed at Length

 
58 O.S. 132, 
Letters of Administration Granted to Applicant where no Contest
Cited

 
58 O.S. 134, 
Nomination by Person Entitled
Discussed

 
58 O.S. 135, 
Revocation of Letters
Discussed at Length

 
58 O.S. 137, 
Hearing
Cited

 
58 O.S. 234, 
Embezzlement Suits - Duty of Judge - Reports
Cited

 
58 O.S. 721, 
Appealable Judgments and Orders of District Court
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA